KEVIN J. MINNICK (STATE BAR NO. 269620)
Kevin.Minnick@probonolaw.com
ZACHARY M. FAIGEN (STATE BAR NO. 294716)
Zack.Faigen@probonolaw.com
MAXIMILLIAN W. HIRSCH (STATE BAR NO. 301872)
Maximillian.Hirsch@probonolaw.com
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

BRENDAN HAMME (STATE BAR NO. 285293)
BHamme@aclusocal.org
ACLU OF SOUTHERN CALIFORNIA
1851 East 1st Street, Suite 450
Santa Ana, California 92705
Telephone: (714) 450-3963

Attorneys for Plaintiffs
EMIDIO "MIMI" SOLTYSIK
JENNIFER MCCLELLAN

(additional counsel on following page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIDIO "MIMI" SOLTYSIK; JENNIFER MCCLELLAN, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX PADILLA, in only his official capacity as Secretary of State; DEAN LOGAN, in only his official capacity as Registrar-Recorder / County Clerk of the County of Los Angeles, <br><br> Defendants. | CASE NO.: 2:15-cv-7916 <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <br><br> (1) VIOLATION OF FIRST AND FOURTEENTH AMENDMENT (EQUAL PROTECTION AND ASSOCIATION) (42 U.S.C. § 1983); <br><br> (2) VIOLATION OF FIRST AMENDMENT (VIEWPOINT DISCRIMINATION) (42 U.S.C. § 1983); AND <br><br> (3) VIOLATION OF FIRST AMENDMENT (COMPELLED SPEECH) (42 U.S.C. § 1983) |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**ADDITIONAL COUNSEL**

DAVID SAPP (STATE BAR NO. 264464)
DSapp@aclusocal.org
ACLU OF SOUTHERN CALIFORNIA
1313 W. 8th St.
Los Angeles, California 90017
Telephone:      (213) 977-5220

Attorneys for Plaintiffs
EMIDIO "MIMI" SOLTYSIK
JENNIFER MCCLELLAN

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Pursuant to the Court's jurisdiction over this matter under 28 U.S.C. § 1331, Plaintiffs Emidio "Mimi" Soltysik and Jennifer McClellan (collectively, "Plaintiffs") file their Complaint against Defendants Alex Padilla and Dean Logan (collectively, "Defendants"), and allege, upon personal knowledge with respect to him and herself and their own acts, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      Proposition 14 radically changed California's electoral system for certain state and federal elected positions, dubbed "voter-nominated" elections. Under the new system, any voter can now vote for any candidate in primary elections for voter-nominated offices *regardless* of the voter's or candidate's *party preference*; the "Top Two" candidates from the primary then advance to the general election. Accordingly, unlike under the old partisan system, still used in the vast majority of other states, political parties no longer participate in these primary elections, except to make endorsements. They cannot, and do not, nominate candidates for such offices through the primary and have no say in which candidate or candidates claim to associate with the party or its beliefs. For all intents and purposes, political parties themselves serve no formal or official role in elections for voter-nominated offices.

2.      The State of California, however, still allows *some* candidates to communicate their political party preference to voters on its ballots, recognizing the importance of political party preference to voter choice. This information is, in keeping with Proposition 14's[1] systemic changes, provided by the candidates solely for the information of the voter.

3.      Indeed, candidates' party preferences communicate a wealth of information to voters, including a sense of the candidates' political ideology and

---

[1] Proposition 14 *available at*: http://vig.cdn.sos.ca.gov/2010/primary/pdf/english/text-proposed-laws.pdf#prop14.

1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

policy platform. Presented to voters on the ballot at the "climactic moment of choice," when voters finally select the candidate whose views most closely align with their own, a candidate's party preference is a critical and, sometimes, the sole factor in how the vast majority of voters vote.

4. The ability to share this critical information with voters, however, is denied to candidates, like Plaintiffs, who are affiliated with "non-qualified" political parties. Non-qualified parties are those political parties not certified under California Elections Code § 5100, which predates Proposition 14 and governs party participation in primaries, a function no longer served by parties in voter-nominated elections.

5. Further compounding this discriminatory treatment, candidates associated with non-qualified parties are compelled to falsely identify as having "no party preference," despite their clear preference for non-qualified political parties, such as Plaintiffs' preferences for the Socialist Party USA (or the "Party").

6. The State of California has no legitimate interest in providing a forum for speech only to candidates whose viewpoints the State has approved, while not only preventing candidates with disfavored viewpoints from expressing themselves, but also actively forcing them to denounce or deny their deeply held political ideologies.

7. In assessing the constitutionality of burdens placed on candidates' rights in the ballot context, courts employ a balancing test, which weighs the extent of the burden suffered by a plaintiff against the state's regulatory interests. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Where the infringement is "severe," courts apply strict scrutiny and require the restriction to be narrowly tailored to serve a compelling governmental interest. *Id.* However, even where the burden is not severe, courts must still take into account each state interest's "legitimacy and strength," as well as "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

2
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8. Here, the confluence of core First and Fourteenth Amendment interests implicated by the restrictions on only some candidates' ability to communicate their party preference constitutes a severe burden on Plaintiffs' rights and should, therefore, be subject to strict scrutiny. The right to freedom of speech and association, to the equal protection of the laws, and to vote are among our most cherished and fundamental rights. Together, these guarantees allow all voters to cast a meaningful vote and all candidates to participate in the democratic process and marketplace of ideas on an equal footing.

9. These restrictions, codified in §§ 13105(a) and 8002.5(a) of the California Elections Code, however, cannot survive any level of scrutiny. They needlessly discriminate against certain candidates and viewpoints and mislead voters as to candidates' beliefs, causing voter confusion, undermining our democracy, and perverting the principles and rights on which our government and society are premised.

10. Plaintiffs bring this challenge to vindicate these core constitutional rights and enjoin Defendants from enforcing the provisions of the California Elections Code that violate the rights of candidates associated with non-qualified political parties. Both on their face and as applied to Plaintiffs, §§ 13105(a) and 8002.5(a) of the California Elections Code are unconstitutional.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction over the claims brought under the U.S. Constitution pursuant to 28 U.S.C. § 1331.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## PARTIES

13. Plaintiff Emidio Soltysik is the National Male Co-Chair and California State Chair of the Socialist Party USA. In 2014, Plaintiff Soltysik ran for State

Assembly in California's 62nd District and actively campaigned as a member of the Party. However, unlike candidates affiliated with qualified political parties, who are free to communicate their preferred political party on the ballot, Mr. Soltysik was not permitted to list the Socialist Party USA, with which he associates and, indeed, chairs. Instead, he was compelled to falsely identify as having "no party preference." This false designation caused confusion among the limited number of voters to whom he was able to speak and, on information and belief, countless more. Mr. Soltysik plans to run for the State Assembly again, at which time he will suffer the same violation of his rights absent this Court's intervention. He is a resident of Los Angeles County, where he is registered to vote.

14. Plaintiff Jennifer McClellan is a member of the Socialist Party USA's National Committee and a former Vice Chair of the Ventura Local chapter. She plans to run for State Assembly, at which time she will suffer a violation of her rights absent this Court's intervention. She is a resident of Los Angeles County, where she is registered to vote.

15. Defendant Alex Padilla, in his official capacity as California Secretary of State, serves as the State's chief elections officer. In that capacity, he administers and enforces the California Elections Code with respect to federal and state elections, and certifies the results of those elections.

16. Defendant Dean Logan, in his official capacity as Los Angeles County's Registrar-Recorder / County Clerk, serves as Los Angeles County's registrar of voters. As the registrar of voters, he administers the primaries for State Assembly seats in Los Angeles County and, assuming he remains in his current position, will administer such primaries in the future.

## STATEMENT OF FACTS

**Proposition 14 Profoundly Changed the State's Elections Process Rendering the Distinction between Qualified and Non-Qualified Parties Inconsequential**

17. Throughout the vast majority of California's political history, political parties played a key role in the elections process. Foremost, political parties nominated their candidates for the general election in primary elections, conducted through the State's ballots. In these primaries, only party members or independents, depending on the party's rules, could vote on the *party's nominee*, and the ballot received by voters depended on their chosen political party.

18. Under that system, the State had an interest in ensuring that political parties had a modicum of political support before setting into motion the machinery of the State to operate *a party's primary*. As such, only parties qualified under California Elections Code § 5100 ("Parties Qualified to Participate in the Primary Election") were permitted to use the State ballot to conduct *their primary elections*.

19. Under Section 5100, a political party can gain qualified status only if it meets one of three stringent requirements: (a) one of that party's candidates received at least 2 percent of the vote in a statewide contest during the last preceding gubernatorial primary election; (b) at least 0.33 percent of the total registered voters on the 154th day before the primary election have declared their intention to affiliate with that political party; or (c) at least 10 percent of the entire vote of the state at the last preceding gubernatorial election has signed a petition asking that their party of choice be granted qualified status.

20. Then, in 2010, the State Legislature referred and California voters adopted Proposition 14, which, together with its implementing legislation, SB 6, radically altered the way the State conducts elections for certain offices.

21. Proposition 14, the "Top Two Primaries Act," amended Section 5, Article II of the California Constitution to create a "nonpartisan blanket primary" system in which voters, regardless of their or the candidates' political party

5
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

preferences, could vote for their candidate of choice in elections for "voter-nominated offices."

22. As defined by the Elections Code, "'Voter-nominated office' means a congressional or state elective office for which a candidate may choose to have his or her party preference or lack of party preference indicated upon the ballot." Cal. Elec. Code § 359.5. Such offices include the Governor, Secretary of State, Attorney General, United States Senators, State Senators, Members of the United States House of Representatives, and State Assembly.

23. In stark contrast to California's prior electoral systems, after Proposition 14 and its implementing statutes, "The primary conducted for a voter-nominated office does not serve to determine the nominees of a political party but serves to winnow the candidates for the general election to the candidates receiving the highest or second highest number of votes cast at the primary election." *Id.*

24. Political parties are no longer "entitled to formally nominate candidates for voter-nominated offices at the primary election. A candidate nominated for a voter-nominated office at the primary election is the nominee of the people and not the official nominee of any party at the general election." No Party Preference Information, California Secretary of State, *available at*: http://voterguide.sos.ca.gov/en/voter-info/elections-in-california.htm; Cal. Elec. Code § 8002.5(d).

25. Additionally, belonging to a qualified party is no longer a prerequisite for participation in a primary election. As such, "The party preference designated by the candidate is shown for the information of the voters only...." Cal. Elec. Code § 8002.5(d).

26. Unlike the old electoral system, which required qualification of a political party before the State would operate the party's primary, candidates for voter-nominated offices need only pay a filing fee and submit their declaration of

candidacy and the signatures of, at most, 100 nominators before being placed on the ballot under the Top-Two Primary system.

27. The Top-Two system does not apply to presidential elections or party leadership elections, in which political parties continue to play a role, or to statutorily designated nonpartisan elections, such as judicial elections, where candidates are prohibited from displaying their party preference. These elections are separately defined, governed by different provisions of the Elections Code, and operate differently than elections for voter-nominated offices.

28. Section 5100 of the Elections Code ("Parties Qualified to Participate in the Primary Election") was not altered by Proposition 14 and, therefore, the party qualification requirements therein remain in effect.

## Candidates Affiliated with Non-Qualified Parties are Prevented from Displaying their Party Preference on the Ballot

29. Two provisions of the California Elections Code, §§ 8002.5(a) and 13105(a), which are the subject of this challenge, govern the display of party preference on the ballot. Both statutes allow only candidates affiliated with qualified political parties to list their party affiliation on the ballot, despite the clear language of Proposition 14 providing that "At the time they file to run for public office, *all candidates* shall have the choice to declare a party preference." Proposition 14, subsection (d) (Open Candidate Disclosure) (emphasis added), *available at*: http://vig.cdn.sos.ca.gov/2010/primary/pdf/english/text-proposed-laws.pdf#prop14.

30. Section 8002.5(a) provides that "A candidate for a voter-nominated office shall indicate one of the following upon his or her declaration of candidacy, which shall be consistent with what appears on the candidate's most recent affidavit of registration: (1) 'Party Preference: _____ (insert the name of the qualified political party as disclosed upon your affidavit of registration).' (2) 'Party Preference: None (if you have declined to disclose a preference for a qualified political party upon your affidavit of registration).'"

7
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

31. Section 13105 likewise provides that "The [party preference] identification shall be in substantially the following form: (1) In the case of a candidate who designated a political party preference pursuant to Section 8002.5, 'Party Preference: _____.' (2) In the case of a candidate who did not state a preference for a political party pursuant to Section 8002.5, 'Party Preference: None.'"

## Candidates Affiliated with Non-Qualified Parties are Denied a Critical Voting Cue that Other Candidates Receive

32. A candidate's party preference is the single largest predictor of voter choice and the primary factor informing how the vast majority of voters vote. However, candidates affiliated with non-qualified political parties, unlike candidates affiliated with qualified parties, are denied the ability to convey this essential information to voters.

33. Party labels are a central consideration for most voters. Especially in low information elections, such as some elections for state offices and elections in off presidential years, voters rely primarily on party labels.

34. Although a voter may not recognize a candidate by name or be able to identify the candidate's stances on a particular issue, the voter will likely recognize the candidate's party label on the ballot. The overwhelming majority of voters have an awareness and understanding of party labels and their meaning.

35. In essence, party labels provide candidates, including unknown ones, with the equivalent of name brand recognition, even when the candidate affiliates with a minor party.

36. Importantly, such labels convey a vast amount of information about a candidate to voters, including a sense of the candidate's ideology and policy platform, such as a candidate's position on taxation, environmental issues, or a woman's reproductive rights. "[T]o the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the

identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise." *Tashjian v. Republican Party*, 479 U.S. 208, 220 (1986).

37. This is especially true of candidates from minor parties, who tend to be more ideologically driven. Such candidates typically adhere closely to the party's ideology and, therefore, a party label conveys even more information to voters about these candidates. This sense of cohesion and well-defined ideology attracts many voters to minor parties.

38. By providing a critical voting cue to the voter in the voting booth at the moment the voter casts their ballot, the presence of party preference labels on the ballot facilitates voter choice, thereby reducing voter confusion. This is especially true in states like California that have long and complicated ballots, which can confuse voters and make the task of voting more difficult for them. Party labels are, therefore, critically important.

39. Quite simply, any time that information is withdrawn from voters, the task becomes more difficult for them.

40. By contrast, the label "Party Preference: None" conveys misinformation to voters about candidates forced to identify in this way and is likely to confuse voters, who have no idea what the label means. Such candidates may be seen by voters as being true independents, declining to state their party preference, or even standing for nothing at all, even when the candidates have a clear affiliation with a non-qualified party with a clearly defined ideology, as Plaintiffs do here.

41. Voters for whom the Socialist Party USA's ideology resounds will not be able to identify a candidate on the ballot who shares their belief system. Likewise, a voter looking to cast a vote for an independent candidate in protest of political parties will also be unable to do so, having no way of distinguishing true independent candidates from those forced to identify as having no party preference.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

42. Although many voters will not know who Plaintiffs are, given Plaintiffs' relative lack of funding and reliance, in large part, on door to door canvassing, as in Plaintiff Soltysik's campaign for Assembly, designating "Socialist Party USA" next to Plaintiffs' names on the ballot would convey to voters what Plaintiffs stand for, including the rights of workers, socioeconomic egalitarianism, etc. As such, the Socialist Party USA label stands as Plaintiffs' best chance to communicate with and grab the attention of large numbers of voters, who are presently deprived of any meaningful descriptor of their platforms.

43. On the other hand, major party candidates are provided voter cues, compounding the disparity.

44. Plaintiffs may also fall prey to the mistrust and negative inferences drawn by voters from the no party preference label, as the designation of no party preference may mislead voters into believing that Plaintiffs lack an organized political philosophy or simply stand for nothing.

45. When campaigning for State Assembly previously, Plaintiff Soltysik informed many voters with whom he spoke that he would appear with the "Party Preference: None" label on the ballot, which raised concerns from those voters about his credibility and added an additional layer of skepticism, after he had represented himself as belonging to the Socialist Party USA. Many of these voters expressed surprise that he was not able to freely represent his beliefs on the ballot.

**The Sections Discriminate against Candidates Affiliated with Non-Qualified Parties on the Basis of Viewpoint in a Limited Public Forum**

46. By providing a space in which candidates may indicate the party with which they affiliate and that most closely represents their political philosophy and policy positions, the Elections Code created a limited public forum on the ballot.

47. Although the limited forum was established for candidates for voter-nominated offices to express their political party affiliation for the information and benefit of voters, candidates for such office who do not belong to State-recognized

parties are instead forced to state that they have "no party preference" rather than the party with which they actually affiliate.

48. By allowing only those candidates whose political party affiliation has been certified by the State, while silencing those whose party affiliations and beliefs have not been approved, the Code discriminates against candidates on the basis of their viewpoint. Democrats and Republicans, for example, are free to indicate that they affiliate with the Democratic and Republican parties, respectively, but Plaintiffs are prohibited from identifying as Socialists. Not only are the restrictions viewpoint discriminatory, but they are also not reasonable given the forum's purpose: to provide a space in which candidates for voter-nominated offices can inform voters which party they affiliate with and which party most closely represents their political ideology. Cal. Elec. Code § 8002.5(d) ("The party preference designated by the candidate is shown for the information of the voters only…").

### Candidates Affiliated with Non-Qualified Parties are Compelled to Falsely State that They Have No Party Preference

49. The democratic process depends on the ability of political candidates to choose the message they wish to convey to voters, particularly the platform on which they are running and the ideals their campaign represents. This process is undermined by forcing candidates affiliated with non-qualified political parties to disavow their political beliefs.

50. Prior to the legislature's enactment of AB 1413 in 2012, §§ 13105 and 8002.5 provided candidates with three options to designate their party preference. First, if the candidate preferred a "qualified" party, the candidate could list his preference as, "Party Preference: ____" and fill in the blank with their party name. Second, if the candidate did not have a party preference, they could simply state, "Party Preference: None." Lastly, if the candidate preferred a "non-qualified" party, or simply did not wish to disclose their party preference, the candidate could choose to have a blank space appear in lieu of the "Party Preference" language.

11
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

51. Now, however, candidates are compelled to state either that they prefer a "qualified" party, or that they have no party preference, *even if both of those statements are false*.

52. As members and leaders of the Socialist Party USA, Plaintiffs have a *strong* preference for the Socialist Party. However, because the option to leave the "party preference" field on the ballot blank was eliminated, Plaintiffs are forced to falsely state that they have *no* political party preference whatsoever on the ballot.

## The Severe Burden on Plaintiffs' Rights Is Not Justified by a Compelling Government Interest

53. California has no legitimate or substantial, let alone compelling, interest in preventing candidates affiliated with non-qualified political parties—especially the Socialist Party USA—from indicating their true party preference on the ballot.

54. First, as noted by the Ninth Circuit in *Chamness v. Bowen* and as discussed above, Proposition 14 rendered the distinction between qualified political parties, which have met the State's approval process *for primary participation*, and non-qualified political parties, which have not, irrelevant with regards to elections for voter-nominated offices; unlike under the old system, "political parties do not choose candidates; the state does not run separate primaries for various parties; and multiple candidates can state that they prefer the same party." 722 F.3d 1110, 1118 n.5 (2013).

55. Second, any appeals to hypothetical voter confusion are ill-founded. "A State's claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism." *Anderson v. Celebrezze*, 460 U.S. 780, 798 (1983).

56. This is all the truer here, where the express purpose of the party preference labels is to inform voters. Indeed, "A primary purpose of the California Election Code 'is to insure the accurate designation of the candidate upon the ballot

in order that an informed electorate may intelligently elect one of the candidates.'" *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1017 (9th Cir. 2002).

57. Washington State, which, like California, operates a nonpartisan blanket primary, allows candidates to list any political party preference they choose so long as it meets the State's character limit. Indeed, candidates have listed party preferences ranging from the well-known Democratic and Republican parties to the Salmon Yoga Party with no apparent voter confusion resulting, contrary to such hypothetical concerns.

58. Furthermore, no voter could be confused or deceived by the presence of a candidate affiliated with the Socialist Party USA on the ballot. The Socialist Party USA and its Democratic-Socialist ideology have a significant history in this country dating back to the turn of the 20th century. Democratic-Socialism is a political ideology that advocates for a democratic system of government combined with a socialist economic system in which the means of production are collectively owned. The Socialist Party of America, the predecessor to the current Socialist Party USA, was founded in 1901 and received popular support, electing hundreds of candidates to political office, including Congress, and state and local elective office, within the first two decades of its existence alone.

59. The Socialist Party's modern incarnation, the Socialist Party USA, was founded in 1974. The Party "strives to establish a radical democracy . . . where working people own and control the means of production and distribution through democratically-controlled public agencies, cooperatives, or other collective groups." The party is committed to full freedom of speech, assembly, press, and religion, and to a multi-party system [and is] dedicated to the abolition of male supremacy and class society, and to the elimination of all forms of oppression, including those based on race, national origin, age, sexual preferences, and disabling conditions" and is vehemently anti-war.

60. Although not affiliated with the Socialist Party USA, current presidential candidate and U.S. Senator Bernie Sanders is a well-known democratic socialist whose candidacy has raised significant interest in and attention to Socialist Party principles and ideology. Throughout July and August, Senator Sanders has spoken to increasingly large audiences, including an event in Seattle with 15,000 people and an event in Portland with 28,000, which was 9,000 people over the venue's capacity. Senator Sanders has attracted larger audiences than any other candidate so far; his democratic socialist ideology and platform are clearly striking a chord with many voters.

61. Finally, AB 1413's changes to §§ 13105 and 8002.5—removing the ability of candidates to leave the party preference field blank—do not fulfill a single one of its stated objectives. AB 1413 was intended to fix purported voter confusion engendered by the blank space option, reduce the purportedly onerous ballot printing requirements that "significantly increase" election costs, and to "shorten[] the manner in which party preference is displayed on the ballot to help with formatting issues." In fact, the revisions actually undermine the stated legislative goals and, therefore, do not serve legitimate, let alone compelling, state interests.

62. Removing the blank space option only increases voter confusion. Indeed, it is entirely unclear how California's requirement that a candidate affiliated with a non-qualified party provide misinformation to voters could do anything but confuse or mislead voters.

63. The voters to whom Soltysik spoke during his previous run for State Assembly did not understand why he was not able to designate his true party affiliation on the ballot and why he was being forced to identify as having no party preference.

64. In addition, AB 1413's removal of the blank space option does nothing to alleviate the supposedly onerous ballot printing costs. Indeed, the various

14
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

legislative committee analyses conceded that AB 1413 would have a "[n]egligible fiscal impact."

65. Lastly, AB 1413's revisions do nothing to "shorten the manner in which party preference is displayed on the ballot." If anything, by eliminating the blank space option and requiring "party preference" language, AB 1413 lengthens the "manner in which party preference is displayed on the ballot" for candidates like Plaintiffs.

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983

**(Violation of Plaintiffs' Equal Protection and Associational Rights under the 1st and 14th Amendments to the U.S. Constitution)**

66. Plaintiffs re-allege and incorporate by reference each of the allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. By treating candidates affiliated with non-qualified political parties differently than candidates affiliated with qualified parties on the sole basis of their speech and beliefs, §§ 13105(a) and 8002.5(a) violate Plaintiffs' right to association and equal protection under the law.

68. Specifically, candidates affiliated with non-qualified political parties and the voters themselves are deprived of a critical voter cue because of the absence of the candidate's party label on the ballot. As discussed above, party labels are a critical factor in how voters vote.

69. As such, Plaintiffs are treated differently and, moreover, are significantly disadvantaged in the exercise of their First Amendment rights and are denied the freedom of association afforded to candidates affiliated with qualified political parties.

70. Defendants Padilla and Logan, by enforcing the provisions of the Elections Code, directly and proximately caused Plaintiffs to be deprived of their equal protection and associational rights under the First and Fourteenth Amendments

of the United States Constitution. In doing the acts complaints of herein, Defendants were acting under color of state law in violation of 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983

**(Violation of Plaintiffs' Right to be Free from Viewpoint Discrimination under the First Amendment of the United States Constitution)**

71. Plaintiffs re-allege and incorporate by reference each of the allegations of Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. Sections 8002.5(a) and 13105(a) violate the First Amendment rights of Plaintiffs by discriminating against them on the basis of their viewpoint. The Supreme Court has consistently found viewpoint discrimination where otherwise qualified speech is excluded from a limited forum.

73. Defendants Padilla and Logan, by enforcing the provisions of the Elections Code, directly and proximately caused Plaintiffs to be deprived of their right to be free from viewpoint discrimination under the First Amendment of the United States Constitution. In doing the acts complaints of herein, Defendants were acting under color of state law in violation of 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

## 42 U.S.C. § 1983

**(Violation of Plaintiffs' Right to be Free from Compelled Speech under the First Amendment of the United States Constitution)**

74. Plaintiffs re-allege and incorporate by reference each of the allegations of Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. Sections 13105(a) and 8002.5(a) compel candidates affiliated with non-qualified political parties to identify as having no party preference on the ballot, despite their clear preference for political parties. The restrictions not only prevent candidates from stating their preferred party, but actually require them to make false

statements of fact and actively eschew their dearly held political beliefs to run for office.

76. Defendants Padilla and Logan, by enforcing the provisions of the Elections Code, directly and proximately caused Plaintiffs to be deprived of their right to be free from compelled speech under the First Amendment of the United States Constitution. In doing the acts complaints of herein, Defendants were acting under color of state law in violation of 42 U.S.C. § 1983.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court grant the following relief:

A. A declaration that §§ 13105(a) and 8002.5(a) violate Plaintiffs' free speech rights under the First Amendment of the U.S. Constitution and Plaintiffs' Equal Protection rights under the 14th Amendment of the U.S. Constitution.

B. A permanent injunction enjoining Defendants, and all persons acting under their direction and control, from enforcing §§ 13105(a) and 8002.5(a) to prevent a candidate affiliated with a non-qualified political party from listing their actual party preference on the ballot;

C. An order awarding Plaintiffs their costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and any other appropriate statutory basis; and

///
///
///
///
///
///
///
///

D.  Such other relief as the Court may deem just and proper.

DATED: October 8, 2015

By: */s/ Kevin J. Minnick*
KEVIN J. MINNICK
Attorney for Plaintiffs
EMIDIO "MIMI" SOLTYSIK
JENNIFER MCCLELLAN

DATED: October 8, 2015

By: */s/ Brendan Hamme*
BRENDAN HAMME
Attorney for Plaintiffs
EMIDIO "MIMI" SOLTYSIK
JENNIFER MCCLELLAN