JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIDIO "MIMI" SOLTYSIK, JENNIFER MCCLELLAN, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>ALEX PADILLA, California Secretary of State, et al., <br><br>　　　　Defendants. | Case No. CV 15-07916 AB (GJSx) <br><br>ORDER **GRANTING** MOTIONS TO DISMISS |

　　Plaintiffs Emidio "Mimi" Soltysik and Jennifer McClellan challenge the constitutionality of California's Elections Code insofar as it allows a candidate's preference for a *qualified* political party to appear on election ballots, but does not allow a candidate's preference for an *unqualified* political body to appear on ballots and instead indicates for such candidates "Party Preference: None." Plaintiffs allege that this scheme violates their rights to free speech, association, and equal protection under the First and Fourteenth Amendments to the Constitution. They seek a permanent injunction barring the California Secretary of State and the Registrar-Recorder/County Clerk of the County of Los Angeles from enforcing these provisions.

1.

Defendant California Secretary of State Alex Padilla ("Secretary") and Intervenor-Defendant Californians to Defendant the Open Primary ("CADOP") filed Motions to Dismiss. (Dkt. Nos. 41, 39.)[1] Plaintiffs file a consolidated opposition to the motions, and the Secretary and CADOP filed replies. The court heard oral argument on March 14, 2016. For the following reasons, the Court **GRANTS** the motions.

## I. BACKGROUND AND PLAINTIFFS' COMPLAINT

Proposition 14, which California voters passed in 2010, changed California's electoral system for certain state and federal elected positions from a partisan primary system to a "voter-nominated" system. In the voter-nominated system, any voter can vote for any candidate in the primary regardless of the voter's or the candidate's party preference. Compl. ¶ 1. Unlike in partisan primaries, in the voter-nominated system parties cannot – and do not – nominate candidates through the primary and do not control which candidates claim to associate with them. *Id.* However, for each candidate, the ballot indicates a "Party Preference" either for a qualified party, or for "None." *See* Cal. Elections Code. § 8002.5(a) (describing party designations on ballot), § 13105(a) (similar) (together "election code").

A "qualified party" is a party certified pursuant to Elections Code § 5100. As relevant here, a party can qualify by showing that 0.33% of registered voters indicate a preference for that party, or the party must submit a petition signed by 10% of the voters in the last gubernatorial election stating that they represent the proposed party. Cal. Elections Code § 5100(b), (c). There are currently six qualified parties: American Independent Party, Democratic Party, Green Party, Libertarian Party, Peace and Freedom Party, and Republican Party. Candidates who wish to express a preference for a non-qualified party cannot do so; instead, for such candidates the ballot indicates "Party Preference: None." Compl. ¶¶ 3-4. Thus, for example, for a

---

[1] Defendant Registrar-Recorder/County Clerk of the County of Los Angeles Dean Logan filed a Notice of Non-Opposition to the Motions.

candidate with a preference for the Republican Party – a qualified party – the ballot would indicate "Party Preference: Republican" next to his or her name; for a candidate with a preference for the Socialist Party USA – a non-qualified party – the ballot would indicate "Party Preference: None" next to his or her name.

Emidio Soltysik, a national co-chair and the California State Chair of the Socialist Party USA, ran for the California State Assembly in 2014. Compl. ¶ 13. Soltysik was not permitted to indicate his association with the Socialist Party USA on the ballot, but instead the ballot identified him as having "no party preference." *Id.* Soltysik claims this was a false designation that caused confusion. He plans to run for the State Assembly again. *Id.*

Jennifer McClellan is a member of the Socialist Party USA's National Committee and a former Vice Chair of the Ventura Local Chapter. Compl. ¶ 14. She plans to run for state assembly.

Under section 8002.5(a) and section 13105(a), the ballot will not indicate Soltysik's or McClennan's preference for the Socialist Party USA; rather, the ballot will indicate for them, "Party Preference: None."

Plaintiffs allege that by enforcing these sections barring them from indicating their preference for the Socialist Party USA on the ballot, and instead compelling them to state "Party Preference: None," Defendants violate their constitutional rights. First, they allege that by not allowing candidates affiliated with non-qualified political parties to provide voters a cue through a party label, they are treated differently from those affiliated with qualified parties, denying them equal protection and freedom of association in violation of the Fourteenth and First Amendments to the Constitution (First Claim). Compl. ¶¶ 66-70. Second, Plaintiffs allege that sections 8002.5(a) and 13105(a) discriminate against them on the basis of viewpoint in violation of their First Amendment rights (Second Claim). Compl. ¶¶ 71-73. Third, Plaintiffs allege that by forcing them to indicate "None" for their party preference, sections 8802.5(a) and 13105(a) violate their First Amendment right to be free from compelled speech (Third

3.

Claim). Compl. ¶¶ 74-76. Plaintiffs seek declaratory relief and a permanent injunction enjoining Defendants from enforcing these provisions preventing a candidate affiliated with a non-qualified political party from listing their actual party preference on the ballot. *See* Compl. Request for Relief.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted). While the scope of review is generally limited to the contents of the complaint, a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *United States v. Ritchie*, 342 F.3d 903,

908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). This incorporation doctrine is permitted to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

### III. DISCUSSION

#### A. Legal Standard Applicable to Plaintiffs' Constitution Challenge to California's Election Law

The law applicable to constitutional challenges to election law is well-established. The following statement is drawn largely from *Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013), which dealt with a previous iteration of the statutes in issue here, and which is discussed more substantively below.

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *Dudum v. Arntz*, 640 F.3d 1098, 1103 (9th Cir.2011) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 1992)). Any "election system, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote.' " *Id.* at 1106 (quoting *Burdick*, 504 U.S. at 433). The "Supreme Court developed a balancing test to resolve the tension between a candidate's First Amendment rights and the state's interest in preserving the fairness and integrity of the voting process." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002).

Under that test, "[w]hen deciding whether a state election law violates First and Fourteenth Amendment speech rights, courts are to 'weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests

the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.'" *Id.* at 1014 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

When an election regulation imposes a "severe [ ] burden[ ]" on First Amendment rights, strict scrutiny applies, so the state must show the law is narrowly tailored to achieve a compelling governmental interest. *Id.* at 1014 (quoting *Burdick*, 504 U.S. at 434). Nondiscriminatory restrictions that impose a lesser burden on speech rights need only be reasonably related to achieving the state's " 'important regulatory interests.' " *Id.* (quoting *Burdick*, 504 U.S. at 434).

"[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the [constitutional] rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

To determine what level of scrutiny to apply, the Court must determine the nature of the burden on Plaintiffs' rights, because "[i]t is the severity of th[ose] burden[s]. . . that determines the standard of review by which we judge the state's interest and, accordingly, decide whether the restriction is unconstitutional." *Rubin,* 308 F.3d at 1014. "Courts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process." *Id.* "This is true even when the regulations 'have the effect of channeling expressive activities at the polls.' " *Id.* (quoting *Timmons*, 520 U.S. at 369. A state election law is a "severe speech restriction[] . . . only when [it] significantly impair[s] access to the ballot, stifle[s] core political speech, or dictate[s] electoral outcomes." *Id.* at 1015. A restriction is particularly unlikely to be considered severe when a candidate has other means of disseminating the desired information. *Id.* at 1014. Ultimately, "voting regulations are rarely subject to strict scrutiny." *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011*)* (citing *Lemons v. Bradbury*, 538 F.3d 1098, 1104 (9th Cir.2008)). This analytical framework applies

regardless of whether a claim arises under the First Amendment, or the Due Process or Equal Protection clauses. *See Dudum*, 640 F.3d at 1106 (noting that Supreme Court has addressed First Amendment, Due Process, or Equal Protection claims "collectively using a single analytic framework."). With this framework in mind, the court will turn to Plaintiffs' three claims.

### B. Plaintiffs Fail to State a Claim for Violation of their Rights to Equal Protection and Freedom of Association (First Claim)

Plaintiffs' first claim is that by denying them the opportunity to state their preference for a non-qualified party on the ballot, but allowing candidates who prefer qualified parties to state their preference on the ballot, the election code violates their rights to equal protection and freedom of association. *See* Compl. ¶¶ 8-10, 32-45, 67-70. In particular, Plaintiffs argue that they are deprived of the opportunity to provide a "voter cue" on the ballot. Compl. ¶ 68.

#### 1. The Burdens on Plaintiffs' Rights are Not Severe

First, the Court will determine how severe a burden sections 8002.5(a) and 13105(a) place on Plaintiffs' rights to equal protection and association. Numerous cases have found that ballot-label regulations place only a modest burden on such rights. *Libertarian Party of California v. March Fong Eu,* 28 Cal.3d 535 (1980) ("*Libertarian Party*") is instructive. There, candidates qualified for the ballot by an independent nomination. A ballot regulation required independently-nominated candidates to be identified on the ballot as "Independent," but the candidates wanted the ballot to identify them with the Libertarian Party, which, at the time, was not a qualified party. The candidates and the Libertarian Party challenged the regulation as an "unconstitutional impairment of the fundamental rights to associate for political activity and to vote." *Libertarian Party*, 28 Cal.3d at 540. The California Supreme Court held that the restriction "denies ballot access to no one. . . ," *id.*, at 543, and "in no way restrict[s the Libertarian Party] in its associational activities or in its publication of the affiliation of its candidates. It is only proscribed, so long as it

remains unqualified, from designating the affiliation on the ballot." *Id.* at 545.

In *Field v. Bowen*, 199 Cal. App. 4th 346, 357 (2011), the Court relied heavily on *Libertarian Party* to uphold a ballot regulation like to those at issue here.[2] Similarly, in *Rubin v. City of Santa Monica*, 308 F.3d 1008 (9th Cir. 2002), the Ninth Circuit found "Santa Monica's prohibition of status designations such as 'activist' does not severely burden a candidate's First Amendment rights" because the regulation was viewpoint neutral, "does not infringe on 'core political speech,' or favor one type of political speech over another . . . [It] does not prevent [candidates] from supporting or discussing political issues, it merely limited how he may describe his occupation on the ballot." *Rubin*, 308 F.3d at 1015. More recently, and for the same reasons, in *Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013), the Ninth Circuit found that ballot regulations like those discussed in *Field* – a candidate can be designated as having a "Party Preference" for a qualified party, "No Party Preference," or there could be a blank next to the name[3] – did not severely burden constitutional rights. *See Chamness*, 722 F.3d at 1119 (" We therefore hold that the law in this case represents a reasonable, nondiscriminatory restriction that imposes a slight burden on speech . . .").

Similarly here, the election code does not bar access to anyone, including Plaintiffs, and does not restrict their ability to associate with the Socialist Party USA. The regulation is also viewpoint neutral because *no* non-qualified political

---

[2] *Field* dealt with California's voter-nominated primary system, but with a prior version of the regulations that permitted the following ballot designations: candidates preferring a qualified political party were designated on the ballot as "My party preference is the _____ Party"; candidates who did not designate a qualified party would be designated as "No Party Preference"; or a candidate could choose to have a blank space where the party designation would otherwise be. *See Field*, 199 Cal. App. 4th at 353-354.

[3] While *Chamness* was pending, the regulations were amended to eliminate the option of leaving the space next to the name blank, s*ee Chamness*, 722 F.3d at 1116 fn. 4, resulting in a party-designation scheme indistinguishable from that now before the Court.

organization can appear on the ballot, regardless of its viewpoint, nor does it infringe on core political speech because Plaintiffs can communicate their message any way they like – except by using the ballot. Importantly, a party or a candidate does not have a right to use a ballot to convey a political message or even a voter cue. *See Timmons*, 520 U.S. at 362-63 (rejecting argument that lack of voter cue is a severe burden; ban on candidate being named by two parties "shuts off one possible avenue a party might use to send a message . . . [but we] are unpersuaded . . . by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters[]. Ballots serve primarily to elect candidates, not as forums for political expression."); *see also Rubin*, 308 F.3d at 1016 ("A ballot is a ballot, not a bumper sticker. Cities and states have a legitimate interest in assuring that the purpose of a ballot is not 'transform[ed] . . . from a means of choosing candidates to a billboard for political advertising.'") (quoting *Timmons*, 520 U.S. at 365).

Thus, that the ballot does not communicate to the voters Plaintiffs' preference for the Socialist Party USA is not, as a matter of law, a severe restriction. Therefore, strict scrutiny does not apply.

### 2. The Proffered Justifications for the Restrictions are Sufficient

Given the lesser burdens imposed, the asserted regulatory interests need only be "sufficiently weighty to justify the limitation" imposed. *See Anderson*, 460 U.S. at 788. The Constitution does not require an "elaborate, empirical verification of the weightiness of the State's asserted regulatory interest." *Timmons*, 520 U.S. at 364; *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 195-196 (1986) ("Legislatures . . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights").

There is no question that states have "an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes" such that states "may prevent 'frivolous or fraudulent candidacies' . . . [or] 'misrepresentation.'" *Timmons*,

520 U.S. at 364-365 (citing cases). In addition, states may establish minimum qualifications for political parties to participate in the election and to appear on the ballot to avoid confusion, deception, and frustration of the democratic process. *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

Defendants invoke these interests here, and it is apparent that they are served by the party designation restrictions in sections 8002.5(a) and section 13105(a). For example, Defendants contend that these restrictions enable it to maintain minimum qualifications for political parties to participate in elections and appear on ballots. This is clearly so because unless a party is "qualified" pursuant to the election code, it cannot appear on the ballot as any candidate's preferred party. Plaintiffs argue, however, that because the voter-nominated primaries greatly diminish the role of parties in the primaries, controlling which parties "appear" on the ballot serves no purpose. But party designations still serve a purpose because even though the parties cannot *nominate* candidates, the designation nevertheless indicates which party the candidate has chosen to align with, information that the legislature evidently believes will assist voters.

Relatedly, were candidates permitted unrestricted self-designation, that could engender confusing, fraudulent, or sloganeering designations. For example, a candidate could self-designate as a "Replublican" in a fraudulent effort to split the bona fide Republican vote, or as a "No New Taxes" candidate as a means of broadcasting a political message. Certainly preventing such abuse of the ballot serves the state's interest in maintaining the integrity of its elections.

Plaintiffs' claims are thus nearly tantamount to challenging the party qualification requirements themselves, although they don't do so expressly. In particular, Plaintiffs do not claim that they attempted but failed to qualify the Socialist Party USA, nor do they argue that they couldn't qualify the party under any of the options section 5100 establishes. In light of case law, such a challenge would likely fail. *See Libertarian Party v. Eu*, 28 Cal. 3d 535, 545, 620 P.2d 612 (1980) (holding

as to previous but more demanding party-qualification statute that "[i]t is settled. . . that the requirements a party must meet to be qualified are constitutional.).These interests are sufficiently weighty to justify the slight burden that the party designation restrictions in sections 8002.5(a) and section 13105(a) place on Plaintiffs' rights to association and equal protection. Plaintiffs therefore fail to state a claim for relief.

### C. Plaintiffs Fail to State a Claim that the Election Code Discriminates Against them on the Basis of Viewpoint (Second Claim)

Plaintiffs' second claim is that the election code discriminates against them on the basis of viewpoint in a limited public forum, in violation of the First Amendment. Compl. ¶ 72. Plaintiffs further contend that under public-forum analysis, strict scrutiny applies. However, the Ninth Circuit has squarely rejected this approach, stating "the issue is not whether a ballot is some sort of public forum, but whether, applying Supreme Court election law, California's ballot regulations constitute 'severe burdens' on free speech rights." *Rubin* , 308 F.3d at 1014. This Court is not free to disregard the Ninth Circuit's determination that forum analysis does not apply. Plaintiffs' argument that the ballot is a public forum and therefore strict scrutiny applies is therefore misplaced. Rather, the above-described balancing test for election regulation applies here just as it did in *Rubin*.

In any event, the *Chamness* Court determined that similar ballot regulations were viewpoint neutral. The Court observed that "the regulation in this case is viewpoint neutral as to the required term 'No Party Preference'. . . The restriction does not allow *any* candidates to term themselves 'Independents' and does allow *all* candidates to put themselves forward on the primary ballot and gather votes. That candidates not identified on the ballot as preferring a particular party must use the term 'No Party Preference' or leave the space blank rather than designating themselves as an 'Independent' has no viewpoint implications, and so, for that reason as well, imposes a '[l]esser burden [ ]' on speech." *Chamness*, 722 F.3d at 1118.

Similarly, here, any candidate can be placed on the ballot and the term "No

11.

1  Party Preference" designates all candidates who don't express a preference for a
2  qualified party regardless of their political viewpoint.  More precisely, sections
3  8002.5 and 13105(a) distinguish between "qualified" parties and non-qualified parties;
4  however, this distinction turns not on viewpoint, but on whether the party has met the
5  neutral requirements for qualifying set forth in section 5100(b) and (c): the party
6  would have to show that 0.33% of registered voters indicate a preference for that
7  party, or the party must submit a petition signed by 10% of the voters in the last
8  gubernatorial election stating that they represent the proposed party.  Cal. Elections
9  Code § 5100(b), (c).  These very same standards apply to any party, independent of
10 viewpoint.  Plaintiffs therefore fail to state a claim that the regulations discriminate
11 against them on the basis of viewpoint.  Because sections 8002.5 and 13105(a) impose
12 no burden on Plaintiffs by way of viewpoint discrimination, the Court need not
13 address whether the State's interests are sufficient.

### D. Plaintiffs Fail to State a Claim that the Election Code Compels Speech In Violation of the First Amendment (Third Claim)

Finally, Plaintiffs claim that sections 8002.5(a) and 13015(a) violate their First Amendment right to be free of compelled speech by "compel[ling them] to state either that they prefer a 'qualified' political party, or that they have no party preference, *even if both of those statements are false*." Compl. ¶¶ 51, 74-76.

This claim fails insofar it rests on the assertion that stating "Party Preference: None" next to Plaintiffs' name is false.  To the contrary, this statement is accurate because the legislature has defined "party" to mean "a political party or organization that has qualified for participation in any primary or presidential general election." Cal. Election Code § 338.  Such a party "qualifies" by complying with the neutral procedures set forth in Cal. Elections Code § 5100(b), (c).  Plaintiffs' preference is not for a qualified party but for a non-qualified party, Socialist Party USA.  Accordingly, because "party" in this context means qualified party, it is accurate to describe Plaintiffs' "Party Preference" as "None."

This is consistent with what the California Supreme Court held in *Libertarian Party*: that it was accurate to describe as "independent" a candidate who qualified for the ballot by the independent nomination process, but that it would be misleading to attach the name of a qualitied party to such a candidate. *See Libertarian Party* , 28 Cal. 3d at 544 ("it is not inaccurate to describe candidates who qualify for the ballot by the independent nomination method as independents, for such candidates are independent of the qualified political parties. . . and it would be misleading to designate the candidate of that political group as a political party candidate on the ballot."); *accord Socialist Workers Party v. Mar. Fong Eu*, 591 F.2d 1252, 1261 (9th Cir. 1978) ("California [] placed no unconstitutional restrictions on ballot access. It merely limits an indication of party affiliation to those parties that have qualified on a statewide basis. . . . A state may in good faith choose a term of art to categorize its candidates without impermissibly burdening their rights or the rights of those who vote for or associate with them. . . . 'Independent' [] label, as applied to a candidate from a non-qualified party [] is no more misleading than the label 'Democrat' or 'Republican' when applied to a person who has won that party's primary. . .").

Significantly, Plaintiffs do not allege that the state lacks the authority to reflect on its ballot the accurate political preference of candidates; its only argument is that the designation "Party Preference: None" is inaccurate for them. As discussed, this allegation fails to state claim, so Plaintiffs' third claim fails.

This claim fails for additional reasons. As suggested above, ballots are not candidate speech; rather, they are "documents prepared, printed, and distributed by— and therefore attributed to—State and local governments." *Caruso v. Yamhill Cty. ex rel. Cty. Com'r*, 422 F.3d 848, 858 (9th Cir. 2005). "Ballots serve primarily to elect candidates, not as a forum for political expression," *Timmons*, 510 U.S. at 262, and candidates have no "right to use the ballot itself to send a particularized message to the voters." *Id*. at 365. Plaintiffs have not pointed to any cases finding that a ballot label reflecting a candidate's party preference is speech by the candidate.

Finally, Plaintiffs argue that the party designation is candidate speech because section 8002.5 repeatedly refers to "selection made by a candidate" (section 8002.5(b)), "[a] candidate designating a party preference" (section 8002.5(d)), and similar language. However, Plaintiffs take such clauses out of context. The complete relevant passages read as follows:

> 8002.5(a) A candidate for a voter-nominated office shall indicate one of the following upon his or her declaration of candidacy, which shall be consistent with what appears on the candidate's most recent affidavit of registration:
>
> (1) "Party Preference: _____ (insert the name of the qualified political party as disclosed upon your affidavit of registration)."
>
> (2) "Party Preference: None (if you have declined to disclose a preference for a qualified political party upon your affidavit of registration)."
>
> (b) The selection made by a candidate pursuant to subdivision (a) shall appear on the primary and general election ballot in conjunction with his or her name . . .

Reading section 8002.5(a) in it its entirety, it is clear that the designation on the ballot must be the name of the qualified party, if any, on the candidate's most recent affidavit of voter registration. The candidate is not permitted to select some different party just for the sake of the ballot. Thus, the "party designation" on the ballot corresponds to the qualified party with which the candidate is already registered. The legislature has decided merely to share this information with the voters on its ballot, and section 8002.5(a) is merely its mechanism of obtaining this information from the candidate. The candidate's role is to complete the declaration of candidacy with information reflecting a fact that already exists, so that the State can include it on its ballots. This is not "candidate" speech.

1  For all of these reasons, Plaintiffs' claim fails to plead any restriction on their
2  right to be free of compelled speech.  The Court therefore need not determine whether
3  the State's interest is sufficient to justify the restriction.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint fails to state any claim for relief.  Defendants' motions to dismiss are therefore **GRANTED**.  No amendment will salvage Plaintiffs' claims, so the action is dismissed with prejudice.

Dated:  April 22, 2016

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE