**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMIDIO SOLTYSIK,
　　　　　　　　*Plaintiff-Appellant*,

　　　　v.

ALEX PADILLA, official capacity as
Secretary of State; DEAN LOGAN,
official capacity as Registrar-
Recorder/County Clerk of the
County of Los Angeles,
　　　　　　　　*Defendants-Appellees*,

　　　　and

CALIFORNIANS TO DEFEND THE OPEN
PRIMARY,
　　　　　　*Intervenor-Defendant-Appellee.*

No. 16-55758

D.C. No.
2:15-cv-07916-
AB-GJS

OPINION

Appeal from the United States District Court
for the Central District of California
André Birotte, Jr., District Judge, Presiding

Argued and Submitted February 8, 2018
Pasadena, California

Filed December 3, 2018

Before:  William A. Fletcher, Johnnie B. Rawlinson,[*]
and John B. Owens, Circuit Judges.

Opinion by Judge Owens;
Partial Dissent by Judge Rawlinson

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's dismissal of an action brought pursuant to 42 U.S.C. § 1983 by a candidate for public office in California challenging the California Elections Code, which mandates that the primary ballot list his party preference as "None" when in reality he prefers the Socialist Party USA.

California permits a candidate's preference for a statutory defined *qualified* political party to appear on election ballots, but does not allow a candidate's preference for a *non*qualified political party to appear on ballots and instead indicates the candidate's party preference in such situations as "None."  The Socialist Party USA is not one of California's six qualified parties.

---

[*] Judge Rawlinson was drawn to replace Judge Reinhardt on the panel following his death.  Ninth Circuit General Order 3.2h.  Judge Rawlinson has read the briefs and reviewed the record.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

In analyzing California's "Party Preference: None" requirement, the panel determined that while the burden the California statutes imposed on plaintiff's First and Fourteenth Amendment rights, at least as pleaded, was not severe, it was more than slight, warranting scrutiny that was neither strict nor wholly deferential.  The panel held that California, at this very early stage of the litigation, failed to demonstrate as a matter of law why its ballot must describe plaintiff as having no party preference when in fact he prefers the Socialist Party USA.  The panel held that although the primary purported justification for the statutes—avoiding voter confusion—was an important government interest, it was unclear how the requirement that plaintiff be listed as having no party preference, advanced that goal.  The panel therefore reversed the district court's dismissal of the action for failure to state a claim, and remanded for proceedings consistent with its opinion.

Dissenting in part, Judge Rawlinson stated that because any burden on associational rights was slight and the restriction was viewpoint neutral, she was persuaded that existing case authority overwhelmingly militated in favor of upholding the challenged California provision.

## COUNSEL

Brendan Hamme (argued), ACLU Foundation of Southern California, Santa Ana, California; Kevin J. Minnick (argued), Alexandra S. Rubow, Maximillian W. Hirsch, and Zachary Faigen, Skadden Arps Slate Meagher & Flom LLP and Affiliates, Los Angeles, California; Peter J. Eliasberg, ACLU Foundation of Southern California, Los Angeles, California, for Plaintiff-Appellant.

Peter H. Chang (argued) Deputy Attorney General; Marc A. LeForestier, Supervising Deputy Attorney; Douglas J. Woods, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Francisco, California; for Defendant-Appellee.

Christopher E. Skinnell (argued) and Marguerite Mary Leoni, Nielsen Merksamer Parrinello Gross & Leoni LLP, San Rafael, California, for Intervenor-Defendant-Appellee.

## OPINION

OWENS, Circuit Judge:

Emidio Soltysik is a candidate for public office in California. He appeals from the district court's dismissal of his challenge to the California Elections Code, which mandates that the primary ballot list his party preference as "None" when in reality he prefers the Socialist Party USA. Because California, at this very early stage of the litigation, has failed to demonstrate as a matter of law why its ballot must describe Soltysik as having no party preference when in fact he prefers the Socialist Party USA, we reverse and remand for proceedings consistent with this opinion.

## I. LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

### A. California's "Party Preference: None" Ballot Requirement

The California Elections Code defines "party" narrowly—a house gathering with Kid 'n Play, a toga get-together at the Delta House, or a climactic fight between John Matrix and Bennett do not qualify.

Under California law, "party" means a "political party or organization that has qualified for participation in any primary or presidential general election." Cal. Elec. Code § 338. A political body may qualify as a "party" if, at least 135 days before a primary election, (1) 0.33 percent or more of all voters registered at least 154 days before the primary have declared the political body as their partisan preference, or (2) a number of voters equaling at least ten percent of all votes cast in the most recent gubernatorial election sign and file a petition declaring that they prefer the would-be party and desire to have it participate in the upcoming primary election. *Id.* § 5100(b)–(c). A political body that does not satisfy either of these qualifications is not a "party" for California election-law purposes.[1] *Id.* Six political bodies currently qualify as "parties" in California: the American Independent Party, the Democratic Party, the Green Party, the Libertarian Party, the Peace and Freedom Party, and the Republican Party. *Qualified Political Parties*, Cal. Sec'y of State, http://www.sos.ca.gov/elections/political-parties/qualified-political-parties/ (last visited Nov. 19, 2018).

Since 2010, rather than a traditional party-nomination system, California has used a "top two" open primary system for "voter-nominated" offices, which include governor, lieutenant governor, U.S. senator, member of the U.S. House of Representatives, California state senator, and the office Soltysik sought, member of the California State Assembly. Cal. Const. art. II, § 5; Cal. Elec. Code § 359.5. Under this system, any candidate who has paid the filing fee and submitted a declaration of candidacy with the signed support

---

[1] Section 5100 provides a third means for a political body to qualify as a "party," but it applies only to already-qualified parties seeking to maintain their qualified status. *See* Cal. Elec. Code § 5100(a). It is thus irrelevant to Soltysik's challenge.

of a specified number of registered-voter nominators appears on the State's primary-election ballot, regardless of political affiliation. Cal. Elec. Code §§ 8020, 8040–41, 8062. Any voter, regardless of political affiliation, may vote for any candidate. Cal. Const. art. II, § 5(a). Political parties, qualified or not, no longer nominate candidates to represent them on the ballot. Cal. Elec. Code § 359.5(a). And a candidate's statement that she prefers a particular party, either in her declaration of candidacy or on the ballot itself, does not make her an official nominee of that party and does not constitute an endorsement by that party. *Id.* § 8002.5(d). The two primary candidates with the most votes, regardless of political affiliation, proceed to compete in the general election. *Id.* § 359.5(a).

Although California has abandoned the traditional party-nomination system for voter-nominated offices, it has not dropped party *labels* from the primary ballot. Indeed, it provides a space for a candidate for a voter-nominated office to announce his preference for a particular party—but only if that party is a qualified one. Cal. Elec. Code §§ 8002.5, 13105(a). For example, if Arnold Schwarzenegger ran as a Republican for a voter-nominated office, his name would appear on the ballot as "Arnold Schwarzenegger Party Preference: Republican." *See id.* § 13105(a)(1). Candidates like Soltysik, however, who do not prefer a qualified political party—that is, who are affiliated with a *non*qualified political body or who are not affiliated with any political body—receive the designation "Party Preference: None" after their names. *Id.* § 13105(a)(2). Candidates not wishing to disclose a preference also receive this label. *Id.*

To be clear, voter-nominated candidates themselves do not directly choose which label—"Party Preference: [qualified party]" or "Party Preference: None"—will appear

next to their names on the primary ballot. Rather, in filling out the required declaration of candidacy, a candidate must indicate her party preference as it appears on her most recent voter-registration form. Cal. Elec. Code § 8002.5(a). If the candidate disclosed a preference on that form for a *qualified* party, then she must check the box for the "Party Preference: [qualified party]" label, which will appear beside her name on the ballot. *Id.* §§ 8002.5(a)(1), 13105(a)(1). If the candidate disclosed a preference on the registration form for a *non*qualified party, or declined to disclose *any* party preference, then she must check the box for the "Party Preference: None" label, which will appear beside her name on the ballot.[2] *Id.* §§ 8002.5(a)(2), 13105(a)(2).

Legislative materials suggest that the California Legislature enacted this party-preference regime primarily to lessen the costs of printing primary ballots by, among other things, reducing the language required to describe candidates' party preferences and thereby shortening the ballots. *See, e.g.*, Cal. S. Rules Comm., Senate Floor Analysis of A.B. 1413, 2011–2012 Reg. Sess., at 4–5 (Jan. 23, 2012) ("This bill shortens the format in which a candidate's party preference is displayed on the ballot . . . to give county election officials greater flexibility to format their ballots."); Cal. Assemb. Comm. on Elections & Redistricting, Analysis of A.B. 1413, 2011–2012 Reg. Sess., at 4 (Jan. 25, 2012) (same); *id.* at 3 (noting testimony of county elections officials that "that certain ballot printing

---

[2] Candidates for voter-nominated offices also must provide a ten-year history of their party affiliation, as shown on their current and past voter-registration documents, in their declaration for candidacy. Cal. Elec. Code § 8040(a).

requirements created an unnecessary burden, and could significantly increase election costs").

## B. Soltysik

Soltysik is the California State Chair and National Male Co-Chair of the Socialist Party USA, which is not one of California's six qualified parties.  In 2014, Soltysik ran for the California State Assembly and campaigned as a member of the Socialist Party USA.  But because the Socialist Party USA is not a "qualified" party under California law, the primary ballot listed "Party Preference: None" next to his name.  *See* Cal. Elec. Code § 13105(a)(2).  Soltysik told voters on the campaign trail that "Party Preference: None" would accompany his name on the ballot, but he alleges that the label nonetheless "caused confusion among the limited number of voters to whom he was able to speak and . . . countless more."  Soltysik did not proceed to the general election.

## C. Procedural Background

Soltysik filed suit under 42 U.S.C. § 1983 against California Secretary of State Alex Padilla and Los Angeles County Registrar-Recorder/County Clerk Dean Logan in their official capacities.[3]  Soltysik alleges that Sections 8002.5 and 13105 of the California Elections Code (the "statutes") violate his (1) First and Fourteenth Amendment rights to freedom of association and equal protection; (2) First Amendment right to freedom from viewpoint

---

[3] Jennifer McClellan, a member of the Socialist Party USA's National Committee, former Vice Chair of the party's Ventura Local Chapter, and former California State Assembly candidate, was also a plaintiff in this action, but she did not appeal the district court's judgment and is thus no longer a party to the case.

discrimination; and (3) First Amendment right to freedom from compelled speech.  He seeks a declaration that the statutes are unconstitutional both facially and as applied to him, and a permanent injunction against their enforcement. Californians to Defend the Open Primary ("CADOP"), a nonprofit corporation that advocates for California's open-primary system, intervened as a defendant.  Secretary Padilla and CADOP then filed motions to dismiss Soltysik's lawsuit for failure to state a claim.[4]

The district court applied the *Anderson/Burdick* balancing test developed for constitutional challenges to election laws and granted the motions to dismiss with prejudice.  *See generally Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).  The court rejected Soltysik's contention that *Anderson/Burdick* balancing is inherently "fact-intensive" such that the court should allow the parties to proceed to discovery.

As to Soltysik's associational claim, the district court concluded as a matter of law that the statutes' party-label restriction was not a "severe" burden, reasoning that the statutes neither barred ballot access to any candidate nor infringed on a candidate's ability to associate with nonqualified political bodies.  The court also noted that candidates lack the right to use the ballot "to convey a political message or even a voter cue."  The district court then considered the State's purported interests in (1) "protecting the integrity, fairness, and efficiency of [its] ballots and election processes"; (2) "prevent[ing] 'frivolous

---

[4] Los Angeles Registrar-Recorder/County Clerk Logan filed statements of non-opposition to the Secretary and CADOP's motions to dismiss.  Though he remains a defendant-appellee to this appeal, he has not participated in the proceedings in this court.

or fraudulent candidacies'"; (3) "establish[ing] minimum qualifications for political parties to participate in the election and to appear on the ballot to avoid confusion, deception, and frustration of the democratic process"; and (4) preventing "sloganeering designations."   The district court did not mention election costs.   The district court concluded that the State's interests were, as a matter of law, "sufficiently weighty to justify the slight burden that the party designation restrictions . . . place[d] on [Soltysik's] rights to association and equal protection."

As to Soltysik's viewpoint-discrimination claim, the district court rejected Soltysik's argument that the ballot is a limited public forum such that strict scrutiny applies. Applying the *Anderson/Burdick* balancing test again, the court held that the statutes were "viewpoint neutral" because the requirements of Section 5100, which govern the difference between qualified and nonqualified parties, regulated all parties regardless of viewpoint and were thus themselves neutral.   Concluding there was no burden "by way of viewpoint discrimination," the district court did not consider the State's interests again.

Finally, the district court rejected Soltysik's compelled-speech claim for two reasons.   First, the court reasoned, the label "Party Preference: None" was accurate in the context of the California Elections Code, since "party" refers only to a *qualified* party, which the Socialist Party USA is not. Therefore, the court said, "it is accurate to describe [Soltysik's] 'Party Preference' as 'None.'"   Second, the court continued, because ballots were not "candidate speech," the party preference label was not "compelled speech."   And with no "restriction on [Soltysik's] right to be free of compelled speech," reexamination of the State's interests was, in the court's view, unnecessary.

Soltysik timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 866 (9th Cir. 2013). We "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs" and will reverse unless the complaint fails to "state a claim to relief that is plausible on its face." *Id.* at 866–67 (citations omitted).

## III. DISCUSSION

"[G]overnment must play an active role in structuring elections," but any election system "inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Burdick*, 504 U.S. at 433 (quoting *Anderson*, 460 U.S. at 788). Thus, "the Supreme Court [has] developed a balancing test to resolve the tension between a candidate's First Amendment rights and the state's interest in preserving the fairness and integrity of the voting process." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002). "This is a sliding scale test, where the more severe the burden, the more compelling the state's interest must be, such that 'a state may justify election regulations imposing a lesser burden by demonstrating the state has important regulatory interests.'" *Ariz. Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016) (quoting *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 729–30 (9th Cir. 2015)). A regulation imposing "severe" restrictions, at the far end of the scale, is subject to strict scrutiny. *See Burdick*, 504 U.S. at 434.

Our court has applied this test to a wide variety of challenges to ballot regulations and other state-enacted election procedures. *See, e.g.*, *Chamness v. Bowen*, 722 F.3d 1110, 1116–19 (9th Cir. 2013) (applying framework to California law requiring independent candidates to be described as having "No Party Preference"); *Dudum v. Arntz*, 640 F.3d 1098, 1106–17 (9th Cir. 2011) (applying framework to San Francisco's "instant runoff" voting system); *Matsumoto v. Pua*, 775 F.2d 1393, 1396–98 (9th Cir. 1985) (applying framework to city charter provision barring recalled elected officials from participating in future elections for two years). And when employing this test, we have stressed that its application "rests on the specific facts of a particular election system, not on strained analogies to past cases," as "[a]nalogy and rhetoric are no substitute for evidence." *Ariz. Green Party*, 838 F.3d at 990 (internal quotation marks and alterations omitted). Indeed, "[t]he Supreme Court and our sister circuits have emphasized the need for context-specific analysis in ballot access cases." *Id.* (collecting cases).

In analyzing California's "Party Preference: None" requirement, we agree with the Secretary of State that the burden the California statutes impose on Soltysik's First and Fourteenth Amendment rights, at least as Soltysik has pleaded it, is not severe. The statutes do not, for instance, bar Soltysik from office or the ballot altogether, *see, e.g.*, *Libertarian Party of Ill. v. Scholz*, 872 F.3d 518, 524–25 (7th Cir. 2017); *Matsumoto*, 775 F.2d at 1397; prohibit the Socialist Party USA or other minority parties from campaigning for Soltysik or endorsing him as a "standard bearer who best represents the party's ideologies and preferences," *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989) (citation omitted); or suffocate "core political speech" by, for instance, banning Soltysik

from communicating his preference for the party's ideology or platform in the public square, *see, e.g.*, *Nader v. Brewer*, 531 F.3d 1028, 1035–38 (9th Cir. 2008). We therefore decline to apply strict scrutiny. *Burdick*, 504 U.S. at 433–34.

Our inquiry, however, does not end there. Ballot regulations "that impose a lesser burden on speech rights" still must be "reasonably related to achieving the state's 'important regulatory interests.'" *Chamness*, 722 F.3d at 1116 (quoting *Rubin*, 308 F.3d at 1014). While the burden here "is not severe enough to warrant strict scrutiny review," it nonetheless "is serious enough to require an assessment of whether alternative methods would advance the proffered governmental interests." *Dudum*, 640 F.3d at 1114 n.27; *see also Ariz. Green Party*, 838 F.3d at 988 (observing that the analysis looks for "means-end fit").

A few features of the "Party Preference: None" regime persuade us that while the burden it imposes on Soltysik's rights is not severe, it is more than "slight," warranting scrutiny that is neither strict nor wholly deferential. Most obviously, as applied to Soltysik and other candidates who prefer nonqualified parties, California's party-preference regime is potentially misleading in at least two ways. First, "Party Preference: None" suggests that Soltysik, an avowed Socialist, has no political preferences, affiliations, or beliefs, which is simply untrue. Second, even if we assume that a reasonable California voter is aware that the Elections Code defines "party" to mean "qualified party," the phrase "Party Preference: None" suggests that Soltysik has no preference as among the six qualified parties, which may or may not be true. Stated differently, the "Party Preference: None" label suggests that Soltysik, and other candidates like him, have affirmatively chosen to eschew the views of all six qualified

parties, regardless of any actual ideological overlap. *Cf. Chamness*, 722 F.3d at 1117 (noting possibility that "'No Party Preference' might . . . evoke a neutral or even negative view—that the candidate is apathetic to the views of the other parties; *i.e.*, while he does not identify with them, he does not reject them.").

These two suggestions are not only factually misleading. Given the potential power of the party-preference label as a signal to voters of a candidate's ideological bona fides, a label suggesting affirmative dissociation from any political ideology is also a potentially significant handicap "at the climactic moment of choice" in the voting booth. *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992); *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986) ("To the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise."). In light of these potential distortions, we cannot agree with the Secretary that, as a matter of law, the statutes impose at worst a "slight" burden on candidates like Soltysik.

The burden of the misleading party-preference label, moreover, falls entirely on candidates like Soltysik who happen to prefer a nonqualified party. This court has tended to uphold election regulations that are "generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process." *Rubin*, 308 F.3d at 1014; *see also Anderson*, 460 U.S. at 788 n.9 ("We have upheld generally-applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself."). But the California statutes here grant an accurate party label—and thus the benefit of a

potentially powerful voting cue—to candidates who affiliate with a qualified party, while denying that label and that benefit to candidates who do not.  "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment" and "discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties." *Anderson*, 460 U.S. at 793–94.  The California statutes impose just this kind of unequal burden.  And in light of the potential value of a party label as a voting cue, we are persuaded that this relative disadvantage, as pleaded, is "serious enough" to warrant more exacting review.[5] *Dudum*, 640 F.3d at 1114 n.27; *see also Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 177 (4th Cir. 2017) (citing *Rosen*, 970 F.2d at 171) ("Of course, if a law gives *some* candidates for the Senate a party identifier, *but not other* candidates for the Senate, it would impose a burden on the associational rights of the candidates left unidentified, even though no candidate has an absolute right to be so identified.").  Thus, we conclude that the burden on candidates like Soltysik is neither severe nor minimal.

That the statutes permit Soltysik to convey his political preferences to voters outside the ballot is not enough to neutralize the burden the misleading party-preference label allegedly imposes.  Soltysik avers that when he told voters

---

[5] As we discuss below, Soltysik's allegations regarding the impact of party labels on voter behavior will be subject to proof on remand.  *Cf., e.g.*, *Chamness*, 722 F.3d at 1117–18 (rejecting argument for requiring alternative party label because on summary judgment plaintiff "failed to provide any evidence that the two phrases are actually likely to be understood by voters to convey these different meanings, and, if they do, that the distinction would tend to affect the way voters cast their votes").

on the campaign trail that the "Party Preference: None" label would appear beside his name on the primary ballot, voters questioned the authenticity of his affiliation with the Socialist Party USA. If these allegations are true—and at this stage of the litigation we must assume they are—then his ability to promote his views through other means was meaningless. To borrow another court's phrasing, "the absence of a label for a candidate"—or in this case, the use of a misleading one—"gives rise to mistrust and negative inferences" and denies a candidate "the identification he had worked to establish at the crucial moment of choice in the election campaign." *Rosen*, 970 F.2d at 173.

Having established the extent of the burden Soltysik has pleaded, we turn now to the other side of the scale. Without factual support at this early stage, the Secretary's arguments for the "Party Preference: None" requirement do not warrant dismissal of Soltysik's claims. The Secretary and CADOP's primary purported justification for the statutes—avoiding voter confusion—is an important government interest. *Chamness*, 722 F.3d at 1118. Yet we struggle to understand how this regime—which requires Soltysik, the National Male Co-Chair and California State Chair of the Socialist Party USA, to be listed as having no "party preference"— advances that goal. Indeed, it seems self-evident that this regime has precisely the opposite consequence.

Nor is it clear why less burdensome (and less misleading) alternatives would not accomplish the goal of reducing voter confusion or, as the Secretary and CADOP also assert, preventing candidates from disguising political slogans or commercial advertisements as party-preference labels or from circumventing California's ban on "status designations." *See* Cal. Elec. Code § 13107(a). For example, the Secretary could place an asterisk by the name

of any candidate who does not affiliate with one of the six qualified parties, directing the voter to a short and clear explanation that the candidate is not so affiliated. Or the ballot could list the political body with which a candidate identifies (such as the Socialist Party USA), and, again using an asterisk, specify that that body does not qualify as a "party" under California law. These techniques may accommodate whatever continued interests California may have in maintaining the distinction between qualified and nonqualified groups, *see Chamness*, 722 F.3d at 1118–19 & n.5, while avoiding mischaracterizations of candidates affiliated with the latter.[6]

Of course, there may be other (and better) ways of accommodating California's interests without the potentially misleading "Party Preference: None" designation. But without any factual record at this stage, we cannot say that the Secretary's justifications outweigh the constitutional burdens on Soltysik as a matter of law. A fully developed evidentiary record will permit a court to evaluate whether the "Party Preference: None" requirement is a constitutionally permissible means of combatting voter confusion, or whether there are more precise ways to accomplish this goal

---

[6] We are skeptical of the Secretary's argument that the party-preference labeling system is necessary to avoid fraudulent attempts to split an opposing party's vote—i.e., "party raiding." As to the Secretary's concern that a candidate may self-designate as preferring, say, the "Re*plub*lican Party," the district court is free to consider on remand whether a rule forbidding designations that "would mislead the voter," as California has in place for ballot occupational designations, Cal. Elec. Code § 13107(e)(1), and applications to qualify as a "party," *id.* § 5100(a), could be a more precise means of preventing fraud while avoiding onerously misleading party-preference labels in cases like Soltysik's.

that do not falsely describe the preferences of candidates like Soltysik.

Our decision in *Chamness*, which featured a similar (but meaningfully different) California ballot requirement, illustrates why a remand for further factual development is warranted here. The version of the California Elections Code then in effect required the ballot to describe Chamness as having "No Party Preference," but Chamness wanted the ballot to list his party preference as "Independent." 722 F.3d at 1113, 1115. Reviewing the grant of summary judgment in the Secretary's favor, our court rejected Chamness's First and Fourteenth Amendments claim because he "failed to provide any *evidence* that the two phrases are actually likely to be understood by voters to convey . . . different meanings, and, if they do, that the distinction would tend to affect the way voters cast their votes." *Id.* at 1117–18 (emphasis added).

Here, because the district court dismissed his complaint, Soltysik never had the opportunity to develop such evidence, and on the record before us we cannot say as a matter of law that the "Party Preference: None" designation is a sufficiently unobtrusive means of clarifying to voters that Soltysik's preferred political body does not qualify as a "party" under California election law. *See, e.g.*, *Duke v. Cleland*, 5 F.3d 1399, 1405–06 & n.6 (11th Cir. 1993) (vacating dismissal of ballot-regulation challenge and remanding for further proceedings because "[d]iscovery has not commenced" and "[t]he existence of a state interest . . . is a matter of proof"); *Wood v. Meadows*, 117 F.3d 770, 776 (4th Cir. 1997) (reversing grant of summary judgment and remanding "for further factual development both as to the burdens . . . upon independent candidates and their supporters, and as to the interests of the [government] in

imposing that [burden]" because the record was "virtually barren of any evidence of the strength or legitimacy of the [government's] interests, administrative or otherwise"); *Rosen*, 970 F.2d at 172–73, 176 (reviewing evidence supporting plaintiff's challenge to Ohio ballot law, including affidavits of three experts). Nor can we conclude as a matter of law that a factually misleading label like the one next to Soltysik's name would not "tend to affect the way voters cast their votes." *Chamness*, 722 F.3d at 1118.

We disagree with the dissent's assertion that "in the absence of a severe burden to constitutional rights, no tailoring of election provisions is required." *Post* at 43 (opinion of Rawlinson, J.). Our cases establish that "there may be 'instances where a burden is not severe enough to warrant strict scrutiny review but is serious enough to require an assessment of whether alternative methods would advance the proffered governmental interests.'" *Ariz. Libertarian Party*, 798 F.3d at 732 n.11 (quoting *Dudum*, 640 F.3d at 1114 n.27). Given the potential distortive effects of the "Party Preference: None" label when applied to candidates like Soltysik—effects which, as we have resolved, are not severe but are more than minimal—we are persuaded that this case is one of those instances.

We also disagree with the notion that a state is categorically "not required to make an evidentiary showing of its interests." *Post* at 42. We acknowledge, as we must, that a state need not offer "elaborate, empirical verification" that voter confusion in fact occurs, *Timmons*, 520 U.S. at 364, particularly where the burden a challenged regulation imposes on a plaintiff's associational rights is slight or minimal. But we cannot agree that "[e]ven a speculative concern of voter confusion is sufficient" *as a matter of law* to justify *any* regulation that burdens a plaintiff's rights, *post*

at 27 (bracket omitted) (quoting *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 685 (7th Cir. 2014)), especially where that burden is more than de minimis.   If the *Anderson/Burdick* framework is to remain a sliding-scale, "means-end fit analysis," *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (en banc), that from time to time "require[s] an assessment of whether alternative methods would advance the proffered governmental interests," *Dudum*, 640 F.3d at 1114 n.27, then a state must sometimes be required to offer evidence that its regulation of the political process is a reasonable means of achieving the state's desired ends.   *See, e.g.*, *Ariz. Green Party*, 838 F.3d at 990 ("Analogy and rhetoric are no substitute for evidence . . . ."); *cf., e.g.*, *Latta v. Otter*, 771 F.3d 456, 469 (9th Cir. 2014) (refusing to take legislative justifications at face value when applying heightened scrutiny to policies that "implicate constitutional rights").   Permitting a state to justify *any* non-severe voting regulation with a merely "speculative concern of voter confusion," *post* at 27 (bracket omitted) (quoting *Stone*, 750 F.3d at 685), would convert *Anderson/Burdick*'s means-end fit framework into ordinary rational-basis review wherever the burden a challenged regulation imposes is less than severe.   We have already rejected such an approach.   *Pub. Integrity All.*, 836 F.3d at 1024–25.

We note finally that unlike this case, most of the decisions to which the dissent refers either arose from summary-judgment proceedings; held the burden on the plaintiff to be minimal as a matter of law and thus accorded the broadest deference to the government's asserted justifications for imposing that burden; or both.   *See, e.g.*, *Timmons*, 520 U.S. at 355 (arising from summary judgment); *Munro v. Socialist Workers Party*, 479 U.S. 189, 192–93 (1986), *rev'g* 765 F.2d 1417, 1418 (9th Cir. 1985)

(arising from summary judgment); *Jenness v. Fortson*, 403 U.S. 431, 432–33 (1971) (arising from summary judgment and pre-dating *Anderson/Burdick* framework); *Ariz. Libertarian Party*, 798 F.3d at 728, 730–31 (arising from summary judgment and holding burden to be minimal); *Dudum*, 640 F.3d at 1103, 1105–14 (arising from summary judgment and holding burden to be minimal); *Lightfoot v. Eu*, 964 F.2d 865, 867–73 (9th Cir. 1992) (holding burden, if any, to be minimal); *Socialist Workers Party v. Eu*, 591 F.2d 1252, 1256, 1259–62 (9th Cir. 1978) (arising from summary judgment, pre-dating *Anderson/Burdick* framework, and applying ordinary rational-basis review). In fact, one case the dissent cites, *Dart v. Brown*, 717 F.2d 1491, 1497 (5th Cir. 1983), arose from a judgment following a full trial. Given the very different posture of these cases, and in light of our determination that Soltysik has adequately pleaded that the "Party Preference: None" label imposes more than a minimal burden, these cases support, rather than undermine, our conclusion that further factual development is necessary and appropriate in this case.

Because we remand this case for further factual development, the district court is free to reapply the *Anderson/Burdick* framework, and thus reassess Soltysik's freedom-of-association, viewpoint-discrimination, and compelled-speech arguments, with the benefit of a complete evidentiary record regarding both the burden on Soltysik and the interests of the State.[7] *Duke*, 5 F.3d at 1405–06 ("We

---

[7] Although Soltysik requests application of traditional First Amendment jurisprudence to his viewpoint-discrimination and compelled-speech claims, each is folded into the *Anderson/Burdick* inquiry. *See, e.g.*, *Dudum*, 640 F.3d at 1106 n.15 (noting that Supreme Court has addressed election-law challenges arising under separate constitutional provisions "using a single analytic framework"); *Rubin*, 308 F.3d at 1014 (rejecting argument that fora analysis applies to ballot

take no position as to the ultimate merits of the plaintiffs' claims. . . . Upon a clear determination of [the State's] interests, the district court must weigh them against the purported burden upon the plaintiffs' constitutional rights . . . ."). The court may, for instance, consider the increased cost, if any, of alternatives to the current "Party Preference: None" designation when performing the balancing test. *See, e.g.*, *Dudum*, 640 F.3d at 1116 (discussing evidence that government's preferred voting method would save money, a legitimate state interest); *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003) (recognizing a state's interest in saving money). Ballot-length and -design obstacles may figure into that inquiry. The court may also wish to consider whether California's interest in policing the qualified-nonqualified distinction remains vital under the current top-two regime and thus whether that interest justifies the burden the statutes impose.[8] *See Chamness*, 722 F.3d at 1118 n.5 (observing that the holding of *Libertarian Party v. Eu*, 620 P.2d 612,

---

and applying *Anderson/Burdick*). As our analysis here indicates, whether and to what extent the statutes improperly discriminate on the basis of viewpoint or compel candidate speech is relevant under that standard to assessing the burden they impose on candidates like Soltysik. *See Rubin*, 308 F.3d at 1015 (considering whether "regulation is viewpoint neutral" in applying *Anderson/Burdick* test); *Chamness*, 722 F.3d at 1118 (same); *Caruso v. Yamhill Cty. ex rel. Cty. Comm'r*, 422 F.3d 848, 854–62 (9th Cir. 2005) (rejecting application of compelled-speech cases to ballot regulation in favor of *Anderson/Burdick* balancing).

[8] To the extent the Secretary's purported justifications are not reflected in the statutes' legislative history, we reject Soltysik's argument that our decision in *Public Integrity Alliance, Inc. v. City of Tucson*, 836 F.3d at 1025, prohibits consideration of such unstated rationales. *Cf. Timmons*, 520 U.S. at 366 n.10 (relying on state interest apparently articulated for first time at oral argument in Supreme Court); *Dudum*, 640 F.3d at 1116 n.28 (similarly interpreting *Timmons*).

618 (Cal. 1980), that "the distinction between qualified and nonqualified parties serves a compelling state interest" no longer controls because it relied "on conditions that no longer obtain—namely, the use of party primaries conducted by the state").

We refrain from prejudging whether California's statutes will survive further scrutiny under the *Anderson*/*Burdick* framework once both sides have developed their evidence. We decide only that at this juncture, judgment in the Secretary's favor is premature. Lacking any evidence showing the true extent of the burden on candidates like Soltysik and the weightiness of California's interests in imposing that burden, "we find ourselves in the position of Lady Justice: blindfolded and stuck holding empty scales." *Ariz. Libertarian Party*, 798 F.3d at 736 (McKeown, J., concurring).

**REVERSED AND REMANDED.**

---

RAWLINSON, Circuit Judge, dissenting in part:

I respectfully dissent from that portion of the majority opinion characterizing as less than severe, but more than slight, the burden placed on Plaintiff Emidio Soltysik (Soltysik) by the California statute governing the content of election ballots.

I also part company with my colleagues' conclusions that a remand is warranted, that the statute is discriminatory, that the existence of alternative means of communication is irrelevant to our analysis, and that the open primary context is relevant to our analysis.

I start from the premise that the purpose of a ballot is to effectuate the votes of the citizenry, and not as a means of communication for politicians seeking office. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 365 (1997); *see also Rubin v. City of Santa Monica*, 308 F.3d 1008, 1016 (9th Cir. 2002), quoting *Timmons*, 520 U.S. at 365 ("A ballot is a ballot, not a bumper sticker.  Cities and states have a legitimate interest in assuring that the purpose of a ballot is not transformed from a means of choosing candidates to a billboard for political advertising.") (alterations omitted).

In addition, we must keep in mind that the states have substantial discretion to regulate the time, place, and manner of elections conducted within their borders. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. . . .") (citation omitted); *see also Rubin*, 308 F.3d at 1014 (same); *Schrader v. Blackwell*, 241 F.3d 783, 790 (6th Cir. 2001) ("[S]tates have significant authority to regulate the formation of political parties and the identification of candidates on the ballot. . . .") (citations omitted); *Field v. Bowen*, 199 Cal. App. 4th 346, 356 (2011) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election-and-campaign-related disorder . . .") (quoting *Timmons*, 520 U.S. at 358) (alteration omitted).

Those challenging ballot regulations face a steep challenge.  State and federal courts agree that this burden is a heavy one. *See Rubin*, 308 F.3d at 1017 ("[A] party challenging [a ballot] regulation bears a heavy constitutional burden. . . .") (citation and internal quotation marks omitted); *see also Field*, 199 Cal. App. 4th at 729 (same).

Generally, absent a severe burden on the rights of association and expression implicit in the act of casting a ballot, the State's known regulatory interests will suffice to justify reasonable ballot restrictions. *See Timmons*, 520 U.S. at 358 ("[A] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. . . .") (citations and internal quotation marks omitted); *see also Anderson*, 460 U.S. at 788 ("[T]he state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory [ballot] restrictions.") (footnote reference omitted); *Burdick v. Takushi*, 504 U.S. 428, 434 ("[W]hen a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions. . . .") (citations and internal quotation marks omitted); *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) ("Where non-severe, lesser burdens on voting are at stake, we apply less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.") (quoting *Timmons*, 520 U.S. at 358) (parallel citation, footnote reference, and internal quotation marks omitted); *Rubin*, 308 F.3d at 1017 (same); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015), *as amended* ("A state may justify election regulations imposing a [less than severe] burden by demonstrating the state has important regulatory interests.") (citation, alteration, and internal quotation marks omitted); *Field*, 199 Cal. App. 4th at 356 (same). It almost goes without saying that the process of gaining entry onto a ballot is not required to be free of hurdles. *See Timmons*, 520 U.S. at 367 ("States need not remove all of the many hurdles third parties face in the American political arena today.").

The United States Supreme Court, United States Courts of Appeal and the California appellate courts have consistently upheld ballot restrictions similar to those involved in this case, further demonstrating the difficulty of successfully challenging election laws.

Soltysik complains that he is unable to designate himself as a member of the Socialist Party USA on the ballot. Because that party is not a qualified party under California law, the ballot describes Soltysik as having no (qualified) party preference.

I agree with the majority that "a state may justify election regulations imposing a lesser burden by demonstrating the state has important regulatory interests." *Arizona Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016) (citation omitted). However, I disagree with the majority's application of that standard, including identification of the state's important interests.

It is important to note that in identifying the state's important interests, the court is not limited to those interests articulated in legislative history. *See Ariz. Libertarian Party*, 798 F.3d at 732 ("In evaluating the constitutionality of [election] statutes, we may look to *any conceivable interest* promoted by the challenged procedures . . .") (citation and internal quotation marks omitted) (emphasis added). And no evidentiary showing on the part of the state is required. *See Timmons*, 520 U.S. at 364 (noting that "elaborate, empirical verification of the weightiness of the State's asserted justifications" is not required) (citation omitted); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 196 (1986) ("To require States to prove actual voter confusion, ballot overcrowding, or the presence of 19reasonable ballot access restrictions would invariably lead to endless court battles over the sufficiency of the evidence

marshaled by a State to prove the predicate. . . . Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight.") (internal quotation marks omitted); *Stone v. Bd. of Election Cmr's*, 750 F.3d 678, 685 (7th Cir. 2014) ("[L]egislatures do not need to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access.") (quoting *Munro*, 479 U.S. at 194–95) (internal quotation marks omitted). "Even a speculative concern [of] voter confusion is sufficient." *Id.* (citation and internal quotation marks omitted).[1]

In the context of a ballot restriction that is less than severe, no tailoring of the regulation is generally required. *See Timmons*, 520 U.S. at 365 ("[B]ecause the burdens the [statute] imposes on the party's associational rights are not severe, the State need not narrowly tailor the means it chooses to promote ballot integrity. The Constitution does not require that [the State] compromise the policy choices embodied in its ballot-access requirements to accommodate the [party] . . .") (citations omitted); *see also Dudum*, 640 F.3d at 1114 ("[W]hen a challenged rule imposes only limited burdens on the right to vote, there is no requirement that the rule is the only or best way to further the proffered interests.") (citations omitted); *Pest Committee v. Miller*, 626 F.3d 1097, 1110 (9th Cir 2010) (concluding that the district court "was not obliged to consider whether [the

---

[1] The majority disagrees with this precept. *See Majority Opinion*, p. 19–20. But a mere few months ago, we reiterated this point in a matter-of-fact-manner. *See Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1065 (9th Cir. 2018) ("A legislative choice may be based on rational speculation unsupported by evidence or empirical data."), quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (alterations omitted).

State's] system could or should be more narrowly tailored") (citation omitted); *Ariz. Libertarian Party*, 798 F.3d at 732 ("[W]e need not determine whether the interests served by [the statute] can be better served by other means . . ."). However, the existence of alternative means of communicating a candidate's message weighs in favor of a finding of constitutionality. *See Jenness v. Fortson*, 403 U.S. 431, 438 (1971) (noting that despite the election restrictions, "independent candidates and members of small or newly formed political organizations are wholly free to associate, to proselytize, to speak, to write, and to organize campaigns for any school of thought they wish"); *see also Munro*, 479 U.S. at 198 (same) (quoting *Jenness*, 403 U.S. at 438); *Timmons*, 520 U.S. at 363 (observing that "[t]he party retains great latitude in its ability to communicate ideas to voters and candidates through its participation in the campaign, and party members may campaign for, endorse, and vote for their preferred candidate even if he is listed on the ballot as another party's candidate") (citations omitted); *Rubin*, 308 F.3d at 1016 (explaining that the candidate's ability to submit a "Candidate's Statement" in a "Voter Information Pamphlet" served to "greatly decrease[] the burden imposed by the ballot restriction [on the designation of one's occupation]") (citing *Timmons*, 520 U.S. at 362–63").

Finally, and importantly, we have ruled that the public forum analysis is not applicable in the ballot restriction context. *See id.* at 1014 ("As we see it, the issue is not whether a ballot is some sort of public forum, but whether, applying Supreme Court election law, California's ballot regulations constitute "severe burdens" on free speech rights.") (citing *Timmons*, 520 U.S. at 358).

As stated, Soltysik's action is predicated on the California election statute that precludes a candidate from designating a party on the ballot if that party is not a qualified party as defined by California election code provisions. *See* Cal. Elec. Code § 5100 (defining a qualified party as one that received at least 2% of the vote for the office during the last gubernatorial primary, or .33 percent of registered voters, or petition signatories equal to 10 percent of the votes cast during the last gubernatorial election).

Courts throughout the country have universally acknowledged that states have a recognized interest in requiring a certain level of support before granting official recognition to a political party. *See Jenness*, 403 U.S. at 442 ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election. . . ."); *see also Munro*, 479 U.S. at 193 ("[I]t is now clear that States may condition access to the general election ballot by a minor-party . . . upon a showing of a modicum of support among the potential voters for the office. . . ."); *Timmons*, 520 U.S. at 366 ("The State surely has a valid interest in making sure that minor and third parties who are granted access to the ballot are bona fide and actually supported, on their own merits, by those who have provided the statutorily required petition or ballot support.") (citing *Anderson*, 460 U.S. at 788 n.9 and *Storer v. Brown*, 415 U.S. 724, 733 (1974)); *Schrader*, 241 F.3d at 790 (same); *Dart v. Brown*, 717 F.2d 1491, 1502 (5th Cir. 1983) (same); *Lightfoot v. Eu*, 964 F.2d 865, 871 (9th Cir. 1992), *as amended* ("The State's interest in requiring that a candidate demonstrate a modicum of support is significant enough to justify not only refusing to

place a candidate on the ballot, but also refusing to designate a candidate on the ballot as Libertarian.  In the latter case, the 1% threshold serves to avoid voter confusion by requiring that a candidate have sufficient support from within a party before his or her name will be associated with that party on the ballot. . . .")

It is this very modicum of support requirement that prevents Soltysik from being listed on the ballot as a member of the Socialist Party USA.  And various courts have convincingly rejected similar challenges.

In *Jenness*, the United States Supreme Court addressed a challenge to a Georgia statute that prohibited the printing of a candidate's name on an election ballot unless the candidate had won a party's primary or had garnered at least 5% of the votes cast in the last general election for the office.  *See* 403 U.S. at 432.   In concluding that there was no constitutional violation, the Court noted that the associational rights of candidates and voters remained intact.  *See id.* at 439.   The Court ruled that the election statute "ha[d] insulated not a single potential voter from the appeal of new political voices within [Georgia's] borders."  *Id.* at 442.

In *Timmons*, the Supreme Court resolved a challenge to a Minnesota statute that "prohibit[ed] a candidate from appearing on the ballot as the candidate of more than one party."   520 U.S. at 353–54.   The Court rejected a constitutional challenge to this "fusion" prohibition.  *See id.* The Court observed that "the supposed benefits of fusion to minor parties do not require that Minnesota permit it."  *Id.* at 362.   The Court acknowledged the argument that the prohibition burdened the right of the party "to communicate its choice of nominees on the ballot on terms equal to those offered other parties, and the right of the party's supporters

and other voters to receive that information." *Id*. Nevertheless, the Court found no First Amendment violation or denial of equal protection, remaining "unpersuaded, . . . by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate." *Id*. at 362–63, 370. The court summed up its ruling by reasoning that "Minnesota's laws do not restrict the ability of the [party] and its members to endorse, support, or vote for anyone they like. The laws do not directly limit the party's access to the ballot. . . . [The laws] only . . . rul[e] out those few individuals who . . . have already agreed to be another party's candidate . . ." *Id*. at 363.

The Court ultimately ruled that the burden imposed by Minnesota's fusion ban was "justified by correspondingly weighty valid state interests in ballot integrity and political stability." *Id*. at 369–70 (footnote reference and internal quotation marks omitted).

In *Socialist Workers Party v. Eu*, 591 F.2d 1252, 1254 (9th Cir. 1979), we upheld as constitutional a California statute "specif[ying] that candidates of political parties qualified to participate in the state's primary election shall be designated by party affiliation on the general election ballot while any candidate qualifying for the ballot through the independent petition procedure shall be identified on the general election ballot solely as 'Independent. . . .'"

This provision precluded any party designation on the ballot for a candidate who qualified as "an independent nominee to a partisan office." *Id*. at 1255. Rather, the nominee had the option of including a three-word statement "designating the principal professions, vocations or occupations of the candidate." *Id*. (citation and internal quotation marks omitted).

Although we recognized that the election law had "possible effects on both associational and voting rights," we nonetheless concluded that the law "placed no unconstitutional restrictions on ballot access." *Id*. at 1260–61. Instead, it "merely limit[ed] an indication of party affiliation to those *parties that have qualified*." *Id*. at 1261 (emphasis added). We rejected the argument that "to list candidates as 'Independent' who affiliate themselves with a *non-qualified political party* leads to voter confusion." *Id*. (emphasis added). We reasoned that the term "Independent" has an established meaning under California law, and that a state may choose such a term of art "to categorize its candidates without impermissibly burdening their rights or the rights of those who vote for or associate with them." *Id*. The fact that some voters might misinterpret the term did not render the law unconstitutional because the label "accurately explain[ed] the presence of the candidate's name on the ballot" and was "a legitimate description indicating the reason a name is on the ballot." *Id*. We concluded that the challenged provision did not "constitute an invidious or arbitrary classification," and was "rationally related to the state's legitimate interest in regulating its electoral process." *Id*. at 1262.

Our analysis in *Socialist Workers' Party* is readily transferable to the remarkably similar facts of this case. Substitute the phrase "Party Preference: None" in the case before us for the term "Independent" in *Socialist Workers' Party* and the parallel is apparent. Nor does the fact that California later adopted an open primary system alter this analysis because cases rejecting similar challenges have involved an open primary system. *See, e.g., Munro*, 479 U.S. at 191 (addressing a blanket primary); *Dart*, 717 F.2d at 1494 (involving an open primary); and *Field*, 199 Cal. App. 4th at 359–60 (concluding that the same

analysis applies to ballot labels whether the system is a partisan primary or an open primary).  The *Field* case is particularly persuasive because it is a California case interpreting California law.

In *Lightfoot*, 964 F.2d at 866, 869, the candidate complained that a California ballot restriction "infringed on . . . the freedom to associate" because the candidate was prevented from being designated as a Libertarian due to failure to garner "1 percent of all votes cast for the office at the last preceding general election."  The Libertarian Party was therefore not a "qualified party" under California law, and no candidates could be designated on the ballot as "Libertarian."  *Id*. at 870.  We described this burden four times as "slight."  *Id*. at 870–72.  We explained that the "1% threshold serves to avoid voter confusion."  *Id*. at 871.  We concluded that because this 1% threshold imposed only a slight burden and because the State's interest in minimizing voter confusion was compelling, there was no violation of the First Amendment right of association.  *See id*.

*Dart*, a case we cited with approval in *Rubin*, 308 F.3d at 1016, involved facts virtually identical to those in this case, including an open primary.  Dart was a registered member of the Libertarian Party, but the Libertarian party was not a recognized party under Louisiana law.  *See* 717 F.2d at 1492.  As a consequence, the party designation space on the primary ballot was left blank, although Dart's four opponents were designated as "Democrats."  *Id*. at 1493.

Rejecting Dart's constitutional challenge, the Fifth Circuit observed that because the candidate of the Libertarian Party was on the ballot, there was no denial of access, despite the lack of designation of party under Dart's

name.  *See id*. at 1499.  The Fifth Circuit reasoned that Libertarian Party members could fully associate with, campaign for, and support a candidate who was committed to advancing their political beliefs.  *See id*.  The Fifth Circuit characterized any injury to First Amendment rights as "at most indirect, attenuated and slight."  *Id*. at 1505.  The Fifth Circuit explained that "the ballot's omission of the designation 'Libertarian' by Dart's name, while listing 'Democrat' by the name of each of his four opponents, resulted not from any invidious or irrational discrimination, but rather from neutral criteria of general and evenhanded application . . ."  *Id*. at 1504.  The Fifth Circuit added that this "neutral criteria" of a showing of a prescribed measure of support in the most recent election had been established by Supreme Court precedent as "rationally and legitimately related to distinctions which the state may make between political parties . . . on the basis of success in prior elections."  *Id*.  (citations and parentheses omitted).  The Fifth Circuit clarified that:

> [I]f candidate political party affiliation is to be designated on the ballot, the potential exists for voter confusion or deception unless there are some restrictions on what constitutes a political party . . . For the state's ballot to represent that a candidate is affiliated with a particular political party, when in fact there is no such party in the commonly understood sense of the word, has the obvious potential for causing voter deception and confusion. . . . [J]ust as an unrestricted proliferation of candidate names on the ballot may engender confusion or deception, so may an unrestricted proliferation of party names.  And, requiring

> some preliminary showing of a significant
> modicum of support for a party before a
> candidate's affiliation with it is designated on
> the ballot is necessary to further the state's
> strong and legitimate interest in minimizing
> ballot confusion and deception . . .

*Id*. at 1508–09.

The Fifth Circuit concluded that although the state of Louisiana "treats the Libertarian Party differently from some other parties, it does so solely on the basis of neutral, even-handed criteria of general applicability.  It is not required to treat things that are different as though they were exactly alike."  *Id*. at 1510 (citations and internal quotation marks omitted).  The court held that the criteria underlying the modicum of support requirement "and the treatment resulting from their application" are reasonably calculated and important to the furtherance of strong and legitimate interests of the State.  *Id*.

In *Schrader*, another case cited with approval in *Rubin*, 308 F.3d at 1015, the Sixth Circuit similarly addressed a challenge from the Libertarian Party in Ohio that "had not met the requirements to be recognized as a political party" due to failure to garner at least five per cent of the vote during the last regular election.  241 F.3d at 784.  Applying the balancing test set forth in *Anderson*, the Sixth Circuit held that the state's "interest in making sure that minor and third parties who are granted access to the ballot are bona fide and actually supported," outweighed the burden of not having a party "cue" on the ballot and "survive[d] constitutional challenge."  *Id*. at 790–91.

California courts, interpreting California law, have issued similar rulings.  In *Libertarian Party of California v.*

*Eu*, 28 Cal. 3d 535 (1989) (in bank), the California Supreme Court was tasked with determining "the constitutionality of section 10210 of the Elections Code insofar as it requires that persons qualifying for the ballot by the procedure of independent nominations be designated on the ballot as Independent." *Id*. at 538 (internal quotation marks omitted). The Libertarian Party challenged the law, arguing that its candidates were denied due process and equal protection of the law when they were listed as "Independent" rather than members of the Libertarian Party. *Id*. at 540.

The California Supreme Court started from the premise that "the California Constitution vests the Legislature with plenary power over the conduct of elections" in California. *Id*. The court observed that, "[p]ursuant to this grant of power, the Legislature determined that . . . 'party' [is] a political organization that has 'qualified for participation in any primary election.'" *Id*.

A party could qualify as a party under the California Election Code in one of two ways:  1) voter registration of affiliated members in a number equal to 1 percent of the voters in the most recent gubernatorial election, or 2) filing of a petition signed by voters in a number equal to 10 percent of the statewide vote for the most recent gubernatorial election. *See id*. at 540–41.  For parties that failed to qualify under either of these procedures, the court explained:

> The Legislature also recognizes that an individual may have significant public support and yet not be affiliated with a qualified party.  To permit such persons to appear on the general election ballot, the Legislature has provided the special procedure of "independent nomination," *i.e*., nominations by petition. . . . If a candidate

> qualifies for a general election by means of
> such an "independent nomination," the word
> "Independent" is printed on the ballot after
> his name instead of a party designation . . .

*Id.* at 541–42 (citations omitted).

The court was not persuaded by the Libertarian Party's argument that "denying its candidates the right to be listed on the ballot as Libertarian" was unconstitutional. *Id.* at 542 (internal quotation marks omitted). The court concluded that the challenged provision "imposes an insubstantial burden on the rights to associate and to vote and that the statute serves a compelling state interest to protect the integrity and stability of the electoral process in California." *Id.* (footnote reference omitted).

The court elucidated that the challenged provision "necessarily" treats candidates differently depending on whether or not they are affiliated with a qualified party. *Id.* at 544. The California Legislature has determined that only those candidates affiliated with a qualified party are entitled to a party affiliation designation on the ballot. *See id.* According to the court's analysis, "it is not inaccurate to describe candidates who qualify for the ballot by the independent nomination method as independents, for such candidates are independent of the qualified political parties." *Id.* (emphasis in the original). Designating a candidate who qualified under the independent nominating process as a party candidate "would be misleading," and the state has a vital interest in eliminating misleading information from a voter's ballot. *Id.* at 544–45 (quoting *Jenness*, 403 U.S. at 442). The California Supreme Court surmised that this vital state interest would be "subvert[ed] . . . if nonqualified parties could achieve ballot status simply by having their

candidates add a wholly unauthorized party designation to their independent nomination papers." *Id*. at 546 (footnote reference omitted). The court clarified that "[i]t was by just this device, however, that the Libertarian Party sought to appear qualified when it was not." *Id*.

The precepts set forth in *Libertarian Party* were faithfully followed by the California Court of Appeal in the more recent *Field* decision. Once again, a California court interpreting California law upheld an election provision limiting party designation on a ballot to qualified parties. *See* 199 Cal. App. 4th at 350. Importantly, the Court of Appeal described the constitutional issue as "essentially the same as the one rejected in *Libertarian Party*." *Id*. The *Field* case and the *Libertarian Party* case were considered "essentially the same" despite the fact that the *Field* case arose following California's adoption of the open primary system, and despite the fact that the challenged designation in *Field* was "No Party Preference" rather than "Independent" for candidates of non-qualified political parties. *Id*. at 350–51, 354. The Court of Appeal adopted the California Supreme Court's reasoning that the challenged provision "imposes an insubstantial burden on the rights to associate and to vote and that the statute serves a compelling state interest to protect the integrity and stability of the electoral process in California." *Id*. at 357 (quoting *Libertarian Party*, 28 Cal. 3d at 542). The Court of Appeal reiterated that "the Libertarian Party is in no way restricted in its associational activities or in its publication of the affiliation of its candidates. It is only proscribed, so long as it remains unqualified, from designating the affiliation on the ballot." *Id*. (quoting *Libertarian Party*, 28 Cal. 3d at 545).

The Court of Appeal was persuaded that important state interests outweighed the insubstantial burden imposed by the election statute.  The court explained that "maintenance of the integrity of the distinction between qualified and non-qualified parties serves a compelling state interest and the restriction of party designation on the ballot set forth in [the statute] furthers that interest without substantially impairing the rights of political association and voting."  *Id.* (citation and alteration omitted).  The court stated in no uncertain terms that "[a]llowing nonqualified parties to be listed on the ballot would cause deception, and even frustration of the democratic process in California."  *Id.* at 358 (citation and internal quotation marks omitted).  Stressing the importance of the party qualification process, the court added:  "Until a party becomes qualified, it is not a *party* whose access to the ballot is secured under the provisions for nomination of qualified party candidates, and it would be misleading to designate the candidate of that political group as a political *party* candidate on the ballot. . . ."  *Id.* (citation and internal quotation marks omitted) (emphases in the original).

The Court of Appeal explicitly rebuffed the contention that *Libertarian Party* was inapplicable because that case addressed a closed primary system and Field was challenging an election statute governing an open primary system.  *See id.* at 359–60.  In the process of reaching its conclusions, the court relied on *Timmons* and *Schrader*, cases upon which our decisions have also relied, as discussed above.  The court characterized *Libertarian Party* as "directly on point."  *Id.* at 362.

Finally, and most persuasively, we recently decided a remarkably similar case in a way that is decidedly unfriendly to the majority's analysis. *See Chamness v. Bowen*, 722 F.3d 1110, 1119 (9th Cir. 2013) (concluding that the "No Party

Preference" listing or blank space imposed a "slight" burden outweighed by state interests).

In *Chamness*, we once more addressed the argument that the California election statute prohibiting candidates of unqualified parties from listing party affiliation violated the First Amendment. *See id*. at 1116.  We were not persuaded, and "uph[e]ld the constitutionality of the statute as reasonably related to furthering the state's important interest in efficiently regulating elections." *Id*.  We characterized the statute as "viewpoint neutral" because it applied to all candidates equally, and "has no viewpoint implications." *Id*. at 1118.  We observed that the statute served to prevent "electoral confusion," *id*., and twice described any burden as "slight." *Id*. at 1118–19.

The majority's conclusion that the "No Party Preference" listing imposes a "serious" or "more than slight" burden, *Majority Opinion*, p. 13, is not only inconsistent with our determination in *Chamness* that this burden is "slight," 722 F.3d at 1118–19, it also bumps heads with various other cases with similar facts describing comparable statutes as involving a "slight" or "minimal" burden.  *See Lightfoot*, 964 F.2d at 870–72 (describing the burden as "slight" four times); *Burdick*, 504 U.S. at 439 (characterizing a prohibition on write-in votes as "slight" even though the prohibition directly denied voters the right to cast their votes as desired); *Timmons*, 520 U.S. at 363 (noting that provisions prohibiting candidates from associating with more than one party "limit, slightly, the party's ability to send a message to the voters and to its preferred candidates"); *Dudum*, 640 F.3d at 1113 (identifying the burdens imposed by San Francisco's runoff system as "minimal at best"); *Arizona Libertarian Party*, 798 F.3d at 732 (characterizing a voter registration form limiting party affiliation to the two major parties and

"other" as imposing a "de minimis" burden and a "slight" burden).

In contrast to this consistent and congruent line of cases, the majority cites no cases describing similar election restrictions as "serious" or "more than slight." The cases cited by the majority do not contain such a description. In fact, the *Dudum* case described the challenged provision as imposing a burden that was "minimal at best." 640 F.3d at 1113. Similarly, in *Arizona Green Party*, 838 F.3d at 991, we concluded that the challenged filing deadline "imposes no more than a de minimis burden on the Green Party constitutional rights."

Existing precedent also refutes the majority's conclusion that the challenged provision precluding the listing of unqualified parties results in a misleading ballot. As discussed, cases at all levels have reached exactly the opposite conclusion: allowing unqualified parties to be listed on the ballot would be misleading and confusing. Our recent *Chamness* decision is most powerfully persuasive, as it addressed virtually the same provision challenged in this case. Rejecting the same constitutional challenge made by Soltysik, we reasoned that the "slight speech burdens" imposed by the "No Party Preference" requirement was not only "viewpoint neutral," but justified by the State's interest in "preventing misrepresentation and electoral confusion" that would otherwise result. 722 F.3d at 1118–19.

Perhaps recognizing that our recent decision in *Chamness* militates toward a different outcome, the majority seeks to distinguish this precedent on the basis that we pointed to a lack of evidence from Chamness. *Majority Opinion*, pp. 18–19. The majority takes the position that Soltysik never had the opportunity to develop evidence in support of his argument. *See id.* at 18. However, in context,

the language relied on by the majority does not carry the import conveyed by the majority. Indeed, the panel in *Chamness* was simply musing regarding a "possible difference" between the phrases "Independent" and "No Party Preference," and potential evocations from the respective phrases. In the course of that musing, the panel included the "no evidence" statement without elaboration. 722 F.3d at 1118. In any event, the majority's argument elides the plethora of cases that have rejected similar arguments as a matter of law. *See*, *e.g.*, *Jenness*, 403 U.S. at 439, 442; *Socialist Workers Party*, 591 F.2d at 1254, 1261–62; *Lightfoot*, 964 F.2d at 869–72; *Dart*, 717 F.2d at 1504; *Schrader*, 241 F.3d at 790–91. This argument also ignores cases, including from the United States Supreme Court, that the state is not required to make an evidentiary showing of its interests. *See Timmons*, 520 U.S. at 364; *see also Munro*, 479 U.S. at 196; *Ariz. Libertarian Party*, 798 F.3d at 732; *Stone*, 750 F.3d at 685.

The majority describes the precedent cited in this dissent as "most[ly]" arising from summary judgment rulings. *Majority Opinion*, p. 20. But "mostly" is not all, and some of the more compelling cases did not arise from summary judgment rulings. *See Rubin*, 308 F.3d at 1013 ("reviewing a 12(b)(6) dismissal"); *Field*, 199 Cal. App. 4th at 352 (motion for a preliminary injunction); *Stone*, 750 F.3d at 680 (dismissal for failure to state a claim); *Storer*, 415 U.S. at 728 (complaints dismissed by "three-judge District Court"); *Libertarian Party*, 28 Cal.3d at 538 (writ of mandate). In any event, it does not strengthen the majority's position that even after considering the best evidence the challengers could muster in the light most favorable to the challengers, courts have rejected similar challenges as a matter of law. *See Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011) (reciting summary judgment standard); *see also, e.g.,*

*Ariz. Libertarian Party*, 798 F.3d at 733–34 (rejecting a similar challenge following summary judgment review).

One final point of disagreement—the majority's discussion of alternatives. *See Majority Opinion*, pp. 16–19. The majority would have the state explain "why less burdensome (and less misleading) alternatives would not accomplish the goal of reducing voter confusion." *Id*. at 16. However, as discussed, precedent is crystal clear that, in the absence of a severe burden to constitutional rights, no tailoring of election provisions is required. *See Timmons*, 520 U.S. at 364 ("[T]he state need not narrowly tailor the means it chooses to promote ballot integrity . . ."); *see also Dudum*, 640 F.3d at 1114 ("[T]here is no requirement that the [challenged] rule is the only or best way to further the proffered interests.")  (citations omitted); *Pest Committee*, 626 F.3d at 1110 ("The district court . . . was not obligated to consider whether Nevada's system could or should be more narrowly tailored.") (citation omitted); *Ariz. Libertarian Party*, 798 F.3d at 732 ("[W]e need not determine whether the interests served by [the Arizona statute] can be better served by other means . . ."); *Democratic National Committee v. Reagan*, 904 F.3d 686, 703 (9th Cir. 2018) (noting that the state is not necessarily "required to show that its system . . . is the one best tailored to achieve its purposes") (citation omitted).

The majority's contrary approach suggests that it is actually applying strict scrutiny.  *See Burdick*, 504 U.S. at 440 n.10 (concluding that the dissent in that case, like the majority in this case, "actually employ[ed] strict scrutiny" as evidenced by the argument "that the State could adopt a less drastic means"); *see also Democratic National Committee*, 904 F.3d at 703 (relying on *Dudum* to note that narrow tailoring is not necessarily a required showing).

Nevertheless, the alternative means of communication that do exist weigh in favor of a finding of constitutionality. *See Jenness*, 403 U.S. at 438; *see also Munro*, 479 U.S. at 198; *Timmons*, 520 U.S. at 363; *Rubin*, 308 F.3d at 1016.

In sum, considering the fact that a ballot is a means of gathering votes rather than a means of communication, the State of California acted within its considerable discretion in requiring a modicum of voter support before listing a party on its ballots. Because any burden on associational rights was slight and the restriction was viewpoint neutral, I am persuaded that existing case authority overwhelmingly militates in favor of upholding the challenged provision.

I would affirm the district court's judgment dismissing the action.